Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## OPINION

No. 04-10-00855-CV

**IN THE MATTER OF L.D.C.**

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-JUV-01182
Honorable Carmen Kelsey, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Karen Angelini, Justice
Sandee Bryan Marion, Justice
Steven C. Hilbig, Justice (concurring in the judgment only)

Delivered and Filed:  November 2, 2011

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

A jury found appellant, a juvenile, engaged in delinquent conduct by committing aggravated assault with a deadly weapon on a public servant and by committing deadly conduct. The jury decided there was a need for disposition and recommended a determinate sentence of forty years and ten years, respectively. The trial court adopted the jury's findings and committed appellant to the Texas Youth Commission. We affirm in part and reverse in part and remand.

### BACKGROUND

Two separate but related incidents form the basis for the charges against appellant. The first incident concerns rifle shots fired at or near a street party. The second incident concerns rifle shots fired at a police officer. Each is discussed below.

For the first event, testimony at trial established that a street party was taking place near Davis Middle School in the early morning hours of April 24, 2010. Appellant was one of approximately 100 people at the party. A witness testified at trial that she saw appellant at the party with a "big gun." An argument between several individuals, including appellant, began at the party and then an unidentified person told appellant to leave. Right after the argument ended, another unidentified person started firing shots from a gun. At trial, appellant admitted he also fired shots from an AK-47 rifle "up in the air" at the party. Bullet fragments from this rifle were found in the windshield of a vehicle parked nearby.

The second incident from which charges were brought against appellant occurred just after the shooting at the party. On the same early morning, Officer Matthew David Martin, a patrol officer with the San Antonio Police Department, was writing a report in his marked patrol vehicle in the parking lot of Davis Middle School when he heard what he recognized to be rifle fire from a location near him. Martin exited the parking lot and drove onto Holly Springs Road where he saw people running and cars quickly leaving the area.

A woman stopped in front of the patrol car and pointed to an area where the appellant and one or two other individuals were running through a field behind Davis Middle School. One of the individuals was later identified as Tre Jones. A row of houses lies to the south of the field and behind where Martin stopped his vehicle. Martin shone a spotlight on the area and saw appellant carrying an AK-47 assault rifle. He sent out a call for back-up over the police radio. Martin then called out to appellant and Jones to stop running and identified himself as a police officer. The individuals continued to run in the opposite direction of the officer, but then appellant stopped, turned and fired the assault rifle near Martin, which was also in the direction of the residential area behind Martin. Martin then returned fire. After Martin fired several

rounds, appellant dropped to the ground but then got back up with the rifle in his opposite hand and started to position himself to fire the rifle again towards Martin. Martin opened fire again on appellant who dropped to the ground but then stood up without the rifle and ran with Jones to the outer buildings of the middle school. By this time, other officers had arrived at the scene and retrieved the rifle from the field. Appellant and Jones were apprehended a short time later where they were hiding outside of Davis Middle School.

Appellant was charged with three counts: attempted capital murder (Count I), aggravated assault on a peace officer with a deadly weapon (Count II), and deadly conduct (Count III). The jury made a finding of not true to Count I. Appellant appeals the jury's findings of true on Count II and Count III.

**SUFFICIENCY OF THE EVIDENCE**

In his second issue on appeal, appellant asserts the evidence is legally insufficient to support the jury's finding that he is the person who shot at or in the direction of Officer Martin in Count II of the charges. Appellant argues there is no evidence to prove he was the person holding or shooting the gun in the field behind Davis Middle School. In a sufficiency challenge, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the charged offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899, 912 (Tex. Crim. App. 2010). We defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* at 899.

Here, Officer Martin testified appellant ran through the field with the AK-47 rifle and fired shots in his direction. He testified that, although it was dark outside, his view was aided by a spotlight attached to his patrol vehicle where he had about ten seconds to view appellant.

Additionally, Martin testified that shortly after the shooting he was given a photo line-up of six individuals. Martin immediately identified appellant from this photo line-up based on his observation of appellant's physical features. Furthermore, Martin testified he had gone through a facial recognition class while employed with the United States Secret Service. Also, Tre Jones, the other individual running with appellant through the field, testified it was in fact appellant who fired the shots in the direction of Martin. Conversely, appellant, who testified on his own behalf, denied he was the person who had control of the rifle in the field and denied he was the person who shot it in the direction of Officer Martin. Appellant's defense at trial was that Jones was the person responsible for the shots fired toward Martin.

Although appellant's own testimony is in conflict with Martin's and Jones' testimony, it was the jury's prerogative to decide credibility of the witnesses and the weight to be given to their testimony. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (en banc). After viewing the evidence in the light most favorable to the verdict, we conclude any rational trier of fact could have found the essential elements of aggravated assault with a deadly weapon on a public servant.[1]

## MOTION FOR MISTRIAL

In his sixth issue on appeal, appellant asserts the trial court erred in failing to grant his motion for mistrial after the jury heard two different potentially prejudicial questions concerning appellant's thirty-five year old cousin, T.C., who testified on his behalf. T.C. responded on cross-examination by the State that she did not know Tre Jones until the day after the shootings, but that she and her fiancé both knew Jones's father. Of the two potentially prejudicial questions, one was about T.C. threatening Jones's grandmother, and the other was about T.C.'s

---

[1] For reasons discussed further below, we do not address the sufficiency of the evidence in support of the jury's findings on the deadly conduct charge.

fiancé threatening Jones's father. The following transpired when T.C. was questioned by the State:

> Q: In fact, you-all know [Tre Jones] enough to actually go by and threaten his grandma, don't you?
>
> A: No, ma'am, I don't do things like that.
>
> Defense Counsel: Objection, Your Honor. That's 403. Can we approach?

The judge then excused the jury and asked the State to continue questioning T.C. to "see where [the State was] going with it." The questions, heard outside of the presence of the jury, established that two young women met Tre Jones at a flea market and accused him of being a snitch. Because Jones thought these two women were T.C.'s daughters, Jones' father called T.C.'s fiancé who denied the women were T.C.'s daughters. T.C. then denied that she or her fiancé threatened Jones or his family.

Next, in deciding whether the initial question giving rise to this objection was in fact prejudicial, the judge, still outside the presence of the jury, had the court reporter read back the question:

> Reporter: Your testimony is your fiancé called his dad, but you didn't tell him that Tre better keep his mouth shut?

However, this question was not the question the jury heard during T.C.'s cross-examination. Apparently, neither the court nor the attorneys realized this was not the question for which the objection was originally made. Nevertheless, the judge sustained the objection and brought the jury back. Defense counsel asked the court reporter to read the above question back to the jury and then asked the court to instruct the jury to disregard it. The court granted this request and gave an instruction to disregard after the reporter read the question back. Defense counsel moved for a mistrial, which was denied.

On appeal, appellant asserts that both questions heard by the jury were inherently prejudicial and the jury could not help but hold these inferences of misconduct against him when they heard that his cousin and her fiancé were threatening Jones and his family. Also, appellant argues the jury likely concluded that appellant was not only a violent offender, but that his family was making threats against others in an attempt to protect him. Similarly, appellant asserts the court's instruction to disregard the question was ineffective to cure the harm resulting from both questions.

We review the trial court's ruling on a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* A mistrial is required "only in extreme circumstances, where the prejudice is incurable." *Id.* (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). Thus, "a mistrial is only required when the improper evidence is 'clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the minds of the jury.'" *Hinojosa v. State*, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999) (quoting *Gonzales v. State*, 685 S.W.2d 47, 49 (Tex. Crim. App. 1985)). Otherwise, where the prejudice is curable, an instruction to disregard eliminates the need for a mistrial. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (en banc).

Here, the two questions asked by the State did not directly involve the appellant. Appellant was not the person accused of making the threats nor was he the subject of the threats. Instead, the questions challenged the credibility of the witness. Also, the first question concerning threats to Jones' grandmother was denied by the witness. Similarly, any prejudice the second question—inadvertently read to the jury—might have produced was cured by the

court's prompt instruction to disregard. Thus, we conclude the State's questions were not "clearly calculated to inflame the minds of the jury" and the instruction to disregard was sufficient to cure any prejudice created by the questions. Accordingly, the trial court did not abuse its discretion by denying appellant's motion for mistrial.

**JURY CHARGE**

In his first point of error, appellant argues the trial court committed error with regard to Count III because the jury charge allowed for adjudication by a less-than-unanimous jury. According to the appellant, the charge listed two instances of deadly conduct in the disjunctive, thus allowing some of the jurors to convict appellant on the first shooting, while allowing other jurors to convict him on the second shooting.

## A. Preservation of Error

Appellant failed to object to the jury charge at trial. Thus, we must first decide whether appellant may raise this complaint for the first time on appeal. Generally, the failure to submit a definition or instruction in the jury charge will not be grounds for reversal of the judgment unless such has been requested in writing and submitted by the complaining party. TEX. R. CIV. P. 278. Consequently, under the Texas Rules of Civil Procedure, a judgment cannot be reversed on the basis of error unless an objection is preserved on the record. *In re A.A.B.*, 110 S.W.3d 553, 557 (Tex. App.—Waco 2003, no pet.).

However, a juvenile proceeding is not wholly a civil proceeding. *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999); *In re G.M.P.*, 909 S.W.2d 198, 201 (Tex. App.—Houston [14th Dist.] 1995, no writ). Instead, a juvenile proceeding may be considered quasi-criminal and, as such, general rules in adult civil proceedings cannot be uniformly applied in juvenile proceedings. *In re D.I.B.*, 988 S.W.2d 753, 756 (Tex. 1999); *see In re C.O.S.*, 988 S.W.2d at 765

("Our general rules requiring preservation in the trial court are just that, general rules, and cannot be applied across the board in juvenile proceedings."); *State v. Santana*, 444 S.W.2d 614, 615 (Tex. 1969) (noting that "juvenile proceedings are not designed to be conducted as ordinary adversary proceedings").

Consequently, when a juvenile court is directed by statute to take an action, failure to take that action may be raised for the first time on appeal in certain situations. *See In re C.O.S.*, 988 S.W.2d at 767. For example, certain unpreserved error, such as a right or requirement embodied in a statute that directs a trial court to act in a certain manner, is not forfeitable and can be raised for the first time on appeal. *Id.*; *see also In re S.G.*, 304 S.W.3d 518, 520 (Tex. App.—Waco 2009, no pet.) (concluding that "rights or requirements embodied in a statute that directs a trial court in a specific manner" may be raised for the first time on appeal in a juvenile case).

In this case, the error complained of is embodied in Texas Family Code section 54.03(c), which states " . . . [j]ury verdicts under this title must be unanimous." TEX. FAM. CODE ANN. § 54.03(c) (West Supp. 2010) (discussing juvenile adjudication proceedings and the right to a jury trial and unanimity of jurors in adjudication of juveniles). Thus, as long as a juvenile defendant does not waive his right to a jury trial, the Legislature requires that a jury verdict in a juvenile proceeding be unanimous. Hence, we conclude that because the Family Code directs the juvenile court to ensure a unanimous jury verdict—an unwaivable requirement of jury disposition in a juvenile case—we may review a violation of this requirement for the first time on appeal. *Cf. In re C.O.S.*, 988 S.W.2d at 767 (determining that a "statutory right to have the trial court explain the use of a juvenile record in future criminal proceedings and [defendant's] right to confront witnesses" are matters that may be raised for the first time on appeal). Having

determined the issue is properly before us, we must determine if the juvenile court in this case erred in the jury charge instruction by allowing for adjudication by a less-than-unanimous jury.

## B. Jury Charge Error

A person commits the offense of deadly conduct "if he knowingly discharges a firearm at or in the direction of . . . a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." TEX. PENAL CODE ANN. § 22.05(b) (West 2010). Accordingly, the trial court instructed the jury on the deadly conduct charge as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 24th day of April, A.D., 2010, in Bexar County, Texas, the respondent, [L.D.C.], a person who is seventeen (17) years of age or older and under eighteen (18) years of age who is alleged to have engaged in delinquent conduct as a result of acts committed before becoming seventeen (17) years of age, did then and there knowingly discharge a deadly weapon, namely: a firearm, at or in the direction of a **habitation**, and [L.D.C.] was reckless as to whether a habitation was then and there occupied; or,

> if you find from the evidence beyond a reasonable doubt that on or about the 24th day of April, A.D., 2010, in Bexar County, Texas, the respondent, [L.D.C.], a person who is seventeen (17) years of age or older and under eighteen (18) years of age who is alleged to have engaged in delinquent conduct as a result of acts committed before becoming seventeen (17) years of age, did then and there knowingly discharge a firearm, at or in the direction of a **vehicle**, and [L.D.C.] was reckless as to whether the said vehicle was then and there occupied, then you will find that the respondent did engage in delinquent conduct as alleged in count III of the petition.

> If you do not so believe, or if you have a reasonable doubt thereof, then you will find that the respondent did not engage in delinquent conduct as alleged in count III of the petition.

(Emphasis added). Additionally, the charge authorized the Presiding Juror to certify a verdict "when you have unanimously agreed upon a verdict." However, this was included only in the general boilerplate language dealing with the selection of the jury foreman at the end of the charge, six pages after the above instruction.

Appellant asserts the charge alleged only a single offense—deadly conduct—but referred to two separate, but related instances of deadly conduct—the shooting at the party and the shooting directed towards Officer Martin and the houses behind him. Appellant claims each paragraph alleges a different manner and means of committing the offense of deadly conduct and there is no reference as to which shooting event the charges for this count were brought. Thus, appellant asserts the charge did not instruct the jury that it must be unanimous as to the specific criminal act that the jury determined would support its verdict on Count III.

Importantly, if a jury charge allows jurors to choose "between disjunctive paragraphs advocated as alternative means of committing the offense," it must be sure "the alternative means" are not separate offenses. *In re M.P.*, 126 S.W.3d 228, 231 (Tex. App.—San Antonio 2003, no pet.). While the definition of deadly conduct suggests that discharging a firearm in the direction of a habitation **or** a vehicle will constitute alternative forms of deadly conduct, a jury charge must not submit the offense in the disjunctive where separate offenses are involved. *See id.* (determining error existed in a jury's conviction of aggravated sexual assault when jury charge included separate offenses in the disjunctive); *Francis v. State*, 36 S.W.3d 121, 124 (Tex. Crim. App. 2000) (deciding it was error for jury to convict defendant of indecency with a child when "two separate offenses were submitted to the jury in the disjunctive"). A "unanimous jury verdict ensures that the jury agrees on the factual elements underlying an offense—it is more than mere agreement on a violation of a statute." *Francis*, 36 S.W.3d at 125.

Here, the jury convicted appellant of the offense of deadly conduct by choosing between disjunctive paragraphs in the jury charge that were likely intended as alternative means of committing the offense. Nevertheless, the alternate means were actually separate offenses because the jury was presented with the two separate shooting incidents from which to choose.

Thus, it is possible some jurors chose to convict appellant based on the shooting at the party, while other jurors chose to convict him based on the shooting directed towards Officer Martin and the houses behind the officer. Additionally, the trial court failed to specifically instruct the jury it must be unanimous as to the offense supporting Count III. Therefore, it cannot be said the jury in this case rendered a unanimous verdict with regard to Count III, as required by the Texas Family Code. Accordingly, the trial court erred in submitting the jury charge in the disjunctive.

## C. Harm Analysis

The interaction between the criminal and civil standards in juvenile cases is problematic when, as here, we must decide whether the civil standard for reversible error or the criminal standard for reversible error governs the determination of harm. *In re S.G.*, 304 S.W.3d at 521; *see* TEX. R. APP. P. 44.1 ("Reversible Error in Civil Cases"), 44.2 ("Reversible Error in Criminal Cases"). Neither the Rules of Civil Procedure nor the Texas Family Code provide clear guidance as to whether to apply a civil harm analysis or a criminal harm analysis for juvenile jury charge error.[2] Similarly, the quasi-criminal nature of juvenile proceedings lends no guidance in evaluating harm on appeal. *See In re S.G.*, 304 S.W.3d at 521.

In adult criminal proceedings, Texas Code of Criminal Procedure article 36.19 governs appellate review of a jury charge. TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2010). Article 36.19 permits an appellate court to find reversible error, when the charge was not objected to, if the error resulted in egregious harm to the defendant. *Almanza v. State*, 686 S.W.2d 157, 171

---

[2] *See In re S.G.*, 304 S.W.3d at 519 (indicating little authority exists in determining whether to apply civil or criminal harm analysis in juvenile proceeding); *In re J.H.*, 150 S.W.3d 477, 485 (Tex. App.—Austin 2004, pet. denied) (recognizing Texas Supreme Court has yet to determine whether civil or criminal harm analysis applies in juvenile appeals); *In re M.P.*, 126 S.W.3d at 231 (reviewing differences in courts of appeals' application of harm analysis in juvenile context); *In re A.A.B.*, 110 S.W.3d at 557 (pointing out that various courts of appeals have not uniformly applied criminal harm standard or civil harm standard in juvenile appeals); *In re L.R.*, 84 S.W.3d 701, 706 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (recognizing Texas Supreme Court "has not decided whether criminal rules for harm analysis should be applied on appeal" in juvenile cases); *In re D.I.B.*, 988 S.W.2d at 756 (noting disagreement among courts as to whether civil or criminal harm analysis should be applied in juvenile cases).

(Tex. Crim. App. 1984). While this article does not specifically apply to juvenile delinquency proceedings, nonetheless, courts have extended article 36.19 and *Almanza* to unpreserved charge error in juvenile appellate review. *In re A.C.*, 2011 WL 3925516, at *6 (Tex. App.—Eastland Sept. 8, 2011, no pet. h.); *see In re A.E.B.*, 255 S.W.3d 338, 350 (Tex. App.—Dallas 2008, pet. dism'd) (evaluating harm using the *Almanza* standard); *In re K.W.G.*, 953 S.W.2d 483, 488 (Tex. App.—Texarkana 1997, pet. denied) (using the criminal harm standard set out in *Almanza* because charging errors affect the substantive rights of juveniles).[3] Because juvenile proceedings are quasi-criminal in nature and because we consider this unpreserved error for the first time on appeal, we agree with these courts that article 36.19 and *Almanza* apply to determine whether appellant was harmed by the trial court's error. Therefore, we will reverse only if the error in the charge caused egregious harm. *Almanza*, 686 S.W.2d at 171.

Under *Almanza*, we consider whether the error "created such harm that [appellant] has not had a fair and impartial trial." *Id.* Egregious harm consists of errors affecting the very basis of the case, depriving defendant of a valuable right, or vitally affecting a defensive theory. *Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex. Crim. App. 1996) (citing *Almanza*, 686 S.W.2d at 171). We review whether egregious harm occurred by reviewing "the error 'in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial court as a whole.'" *Skinner v. State*, 956 S.W.2d 532, 544 (Tex. Crim. App. 1997) (quoting *Almanza*, 686 S.W.2d at 171).

First, in reviewing the entire jury charge, we find the only error to be contained in Count III, as previously mentioned. Additionally, based on our prior sufficiency review, we find the

---

[3] However, in *In re A.A.B.*, the Waco Court of Appeals noted "chapter 36 of the Code of Criminal Procedure does not apply to juvenile proceedings." *In re A.A.B.*, 110 S.W.3d at 556.

evidence sufficient to support a finding that appellant fired shots in the direction of Officer Martin and the houses behind Martin. Furthermore, appellant admitted he fired shots from the AK-47 rifle at the party. Thus, the evidence supported a charge of deadly conduct for either of appellant's criminal offenses.

In *Ngo v. State*, the Court of Criminal Appeals found that the submission of three separate offenses in the disjunctive without a unanimity instruction caused egregious harm when the prosecutor and trial judge affirmatively misstated the law as permitting a "mix and match" verdict. 175 S.W.3d 738, 742 (Tex. Crim. App. 2005). In that case, the prosecutor argued more than once that the jury could be less-than-unanimous in choosing between several offenses to arrive at a verdict on a specific charge. Also, in *Clear v. State*, the prosecutor told the jury during closing arguments that they could use three different offenses to convict the defendant of aggravated sexual assault on a child. *Clear v. State*, 76 S.W.3d 622, 623–24 (Tex. App.— Corpus Christi 2002, no pet.). The prosecutor argued, "You don't all have to agree on which manner we've proven to you, as long as we've proven one of [them]." *Id.* Thus, in both of these cases the jury charge error was combined with an affirmative statement allowing a jury to convict on a less-than-unanimous basis and the appellate courts determined there was egregious harm.

Here, the State argued in closing that either shooting event could support the charge of deadly conduct. As a result, the State's closing arguments made it clear that the jurors could consider both shooting events, thus leaving it undeterminable which shooting event ultimately supported the true finding for Count III. We believe that the prosecutor's comments in closing tipped the scale leaving the jury to decide Count III based on a less than unanimous verdict. Like in *Ngo* and *Clear*, there was more than just jury charge error because the State compounded

the error with the affirmative statement during closing. *Ngo*, 175 S.W.3d at 742; *Clear*, 76 S.W.3d at 623–24.

Alternatively, the State argues that the overall verdict by the jury supports appellant's unanimous conviction on Count III. Specifically, the State asserts that the verdict was unanimous on Count III because the jury made a true finding for Count II (the shooting directed toward Officer Martin) and because appellant himself admitted to shooting the rifle at the party. We disagree. It does not follow that if a jury unanimously believes that only one of the State's accusations is true then the jury unanimously believes that all of the State's accusations are true, so that the appellant was not actually deprived of the right to a unanimous verdict. Furthermore, "[f]or this court to determine that the harm was not egregious, because the jury would surely have found [appellant] guilty of all of the offenses if it had been given the opportunity, would put us in the place of the jurors and would deprive [appellant] of his right to a guilty finding by a unanimous jury." *Clear*, 76 S.W.3d at 624.

Therefore, we hold that the charge error, further complicated by the State's remarks in closing, caused egregious harm because: there was evidence of more than one criminal act to support Count III; the submitted charge for Count III related to two separate acts; comments in closing by the State suggested jurors could decide Count III based on either criminal act; and the charge did not instruct the jury that it must be unanimous as to a single act for Count III.

## CONCLUSION

We affirm the judgment of the trial court with respect to Count II. We reverse the trial court's judgment as to Count III in the petition and remand for further proceedings as to that count.[4]

Sandee Bryan Marion, Justice

---

[4] We do not address appellant's remaining issues on appeal because they are not dispositive. TEX. R. APP. P. 47.1.