# IN THE SUPREME COURT OF TEXAS

══════════
No. 12-0032
══════════

IN THE MATTER OF L.D.C., A CHILD

════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
════════════════════════════════════════════════

**Argued January 10, 2013**

JUSTICE HECHT delivered the opinion of the Court.

The question in this juvenile delinquency proceeding is whether the trial court committed reversible error by submitting elements of an offense to the jury disjunctively, allowing for a non-unanimous verdict. We answer no and therefore reverse the court of appeals' judgment[1] and render judgment for the State.

L.D.C., age 16, admitted that during a street party near a middle school, he fired five or six shots from an AK-47 rifle "in the air". A bullet fragment was later found in the sun visor of a vehicle parked nearby. Officer Martin heard the shots and drove up as L.D.C. and a friend, T.J., were running through a field behind the school. When Martin yelled "police" and ordered them to stop, one of the two turned and fired toward him and the row of houses behind him. Martin and T.J. testified it was L.D.C.; L.D.C. testified it was T.J. Martin returned fire, the rifle fell to the ground, and L.D.C. and T.J. continued running away. The two were found hiding outside the school.

---

[1] 357 S.W.3d 124 (Tex. App.–San Antonio 2011).

L.D.C. was charged with three criminal offenses: attempted capital murder (Count I), aggravated assault on a public servant (Count II), and deadly conduct (Count III). The jury answered "not true" to Count I and "true" to Counts II and III, assessing determinate sentences of forty years for Count II and ten years for Count III. Based on the verdict, the trial court committed L.D.C. to the Texas Youth Commission.[2] The court of appeals affirmed the aggravated assault adjudication but reversed on deadly conduct.[3] Only the State has petitioned for review. Thus, we are concerned only with L.D.C.'s adjudication for deadly conduct.

"A person commits [deadly conduct] if he knowingly discharges a firearm at or in the direction of . . . a habitation . . . or vehicle and is reckless as to whether the habitation . . . or vehicle is occupied."[4] "Jury verdicts [in cases under the Juvenile Justice Code] must be unanimous."[5] In criminal cases, in which the jury verdict must also be unanimous, "when a single crime can be committed in various ways, jurors need not agree upon the mode of commission."[6] Had the State alleged only that L.D.C. shot the rifle during the party, surrounded by both vehicles and habitations, the jury would not have been required to agree that he shot at one or the other. But the State alleged that L.D.C. shot the rifle on two occasions, first during the party, as L.D.C. admitted, "at and in the

---

[2] L.D.C. tells us in his brief that he has since been transferred to the Texas Department of Criminal Justice. Brief for Respondent ii.

[3] 357 S.W.3d at 133.

[4] TEX. PENAL CODE § 22.05(b).

[5] TEX. FAM. CODE § 54.03(c).

[6] *Francis v. State*, 36 S.W.3d 121, 124 (Tex. Crim. App. 2000) (quoting *Schad v. Arizona*, 501 U.S. 624, 649 (1991) (Scalia, J., concurring)).

direction of a vehicle" while being "reckless as to whether [it] was . . . occupied", and later in the field, toward Martin and a row of homes, which L.D.C. denied. The trial court instructed the jury they could find that L.D.C. engaged in deadly conduct if, with the requisite intent and recklessness, he shot either toward a vehicle, apparently referring to the first shooting, or toward a habitation, referring to the second. While the jury did not have to agree on how an offense was committed, it had to agree "on the same act for a conviction", not "mere[ly] . . . on a violation of a statute".[7] The court did not instruct the jury that they had to be unanimous in finding that L.D.C. committed an offense either in shooting at a vehicle (during the party), or in shooting at a habitation (in the field), or both. Theoretically, at least, the jury could agree that L.D.C. committed deadly conduct even though only some believed it occurred during the party and the rest believed it occurred in the field. The court of appeals concluded that the disjunctive jury instruction was error:

> [T]he jury convicted [L.D.C.] of the offense of deadly conduct by choosing between disjunctive paragraphs in the jury charge that were likely intended as alternative means of committing the offense. Nevertheless, the alternate means were actually separate offenses because the jury was presented with the two separate shooting incidents from which to choose. Thus, it is possible some jurors chose to convict appellant based on the shooting at the party, while other jurors chose to convict him based on the shooting directed towards Officer Martin and the houses behind the officer. Additionally, the trial court failed to specifically instruct the jury it must be unanimous as to the offense supporting Count III. Therefore, it cannot be said the jury in this case rendered a unanimous verdict with regard to Count III, as required by the Texas Family Code.[8]

---

[7] *Francis*, 36 S.W.3d at 125. *See also Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005) (holding that for disjunctive jury charges, it is error if the judge fails to instruct a jury that it must be unanimous in deciding which one or more of the disjunctively submitted offenses it found the defendant to have committed).

[8] 357 S.W.3d 124, 131 (Tex. App.–San Antonio 2011).

3

L.D.C. did not object to the disjunctive jury instruction for Count III, so the question then became whether the error was reversible when it was not preserved. The Family Code provides that in juvenile justice cases, "[t]he requirements governing an appeal are as in civil cases generally."[9] In civil cases, unobjected-to charge error is not reversible unless it is fundamental, which occurs only "in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas."[10] Fundamental error is reversible if it "probably caused the rendition of an improper judgment [or] probably prevented the appellant from properly presenting the case to the court of appeals."[11] But we have stated that "a juvenile proceeding is not purely a civil matter. It is quasi-criminal, and . . . general rules requiring preservation in the trial court . . . cannot be applied across the board in juvenile proceedings."[12] In criminal cases, unobjected-to charge error is reversible if it was "egregious and created such harm that his trial was not fair or impartial", considering essentially every aspect of the case.[13] If, for example, "[i]t is . . . highly likely that the jury's verdicts

---

[9] TEX. FAM. CODE § 56.01(b).

[10] *In the Matter of C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999) (citing *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982) (per curiam)).

[11] TEX. R. APP. P. 44.1(a).

[12] *C.O.S.*, 988 S.W.2d at 765.

[13] *Cosio v. State*, 353 S.W.3d 766, 776-777 (Tex. Crim. App. 2011) ("An egregious harm determination must be based on a finding of actual rather than theoretical harm. For actual harm to be established, the charge error must have affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. When assessing harm based on the particular facts of the case, we consider: (1) the charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record.") (footnote and internal quotation marks and brackets omitted).

. . . were, in fact, unanimous", unobjected-to charge error is not reversible.[14] Without analyzing differences between these standards for civil and criminal cases, the court of appeals followed other courts in applying the criminal standard and concluded that the error was reversible.[15] The court remanded the case for a new trial on Count III.[16]

We granted the State's petition for review[17] to decide the proper standard for reviewing unpreserved charge error in a juvenile delinquency case. We have concluded, however, that under any standard, the error in this case was not harmful.

From the evidence and the jury's finding of aggravated assault, it is highly likely that the jury unanimously agreed that L.D.C. committed deadly conduct both during the party and in the field. L.D.C. admitted that he fired the AK-47 five or six times during the party and that there were vehicles nearby. There can be no question that he acted knowingly — "aware of the nature of his conduct"[18] — or that he shot at a vehicle: a bullet fragment was retrieved from inside a vehicle. L.D.C. also admitted that the rifle was fired in the field — by T.J.; the jury, in finding aggravated assault, unanimously agreed that L.D.C., not T.J., was the shooter, acting "intentionally or knowingly". The evidence established that there were homes behind Martin, in the direction L.D.C.

---

[14] *Cosio*, 353 S.W.3d at 778.

[15] 357 S.W.3d 124, 132-133 (Tex. App.–San Antonio 2011).

[16] *Id.* at 133.

[17] 55 Tex. Sup. Ct. J. 1440 (Sept. 21, 2012).

[18] TEX. PENAL CODE § 6.03(b) ("A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.").

was shooting, and well within range of an AK-47. L.D.C.'s unconcern for whether the vehicles and habitations in the directions in which he fired were occupied was reckless — "consciously disregard[ing] a substantial and unjustifiable risk" and "a gross deviation from the standard of care that an ordinary person would exercise"[19] — during the party and later in the field.

For the jury to have agreed that L.D.C. engaged in deadly conduct either during the party or in the field, but not to have agreed that it occurred at one place or both, at least one juror would have had to: disbelieve *both L.D.C.'s denial* that he shot in the field *and his admission* that he shot during the party; or believe that he shot at either vehicles or habitations, but not both; or believe that L.D.C. consciously disregarded the possible presence of occupants in either the surrounding vehicles or the surrounding habitations, but not both; or have been irrational. We think the first three are highly unlikely, and we will not base reversible error on the possibility that a juror might act irrationally, which a correct instruction cannot prevent. Under the civil standard of review, error in the trial court's disjunctive submission of deadly conduct did not probably cause an improper judgment or probably prevent a proper presentation of L.D.C.'s appeal.[20] Under the criminal standard of review, the error was not egregious,[21] and "[i]t is . . . highly likely that the jury's verdicts . . . were, in fact,

---

[19] *Id*. § 6.03(c) ("A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.").

[20] TEX. R. APP. P. 44.1(a).

[21] *See Cosio v. State*, 353 S.W.3d 766, 776-777 (Tex. Crim. App. 2011).

6

unanimous."[22] Thus, under either the civil or criminal standard of review, the error does not warrant reversal.

L.D.C. concedes that the State's argument, to the same effect as the argument we have just set out,

> might have been sound if the State's counsel had not argued to the jury [in summation] that it could adjudicate L.D.C. of this single offense [of deadly conduct] on either of the two situations raised by the evidence, but the State invited the jury to adjudicate on either set of fact[s], and the jury of course did not say whether it adjudicated unanimously on one of the two, or split its vote. As the court of appeals said in its opinion, this argument "tipped the scale leaving the jury to decide Count III based on a less than unanimous verdict.["][23]

The State's closing argument to which L.D.C. and the court of appeals refer was this:

> Now, for Count 3, something to remember is that it's not just the houses and vehicles over by the party, because remember when he shot at Officer Martin, what was all behind Officer Martin? Houses. That was a residential fence that Officer Martin was standing in front of. So when he's shooting at Officer Martin — and that rifle can go over 400 yards, the firearms expert testified — when he's shooting at Officer Martin, if he misses, he can hit one of those houses back there. You heard the 911 tapes. People are stuttering, they're crying, they're terrified because they're hearing these gunshots by their houses.

This does not seem to us so much a suggestion that the jury might find that deadly conduct occurred only during the party or only later in the field as it is an encouragement to find that deadly conduct occurred both times. Even if the State's argument did suggest that the jury could find only one or the other, if not both, we think, again based on the jury's finding of aggravated assault and the uncontradicted evidence, the jury did not take the suggestion.

---

[22] *Id*. at 778.

[23] Brief for Respondent 19 (citing 357 S.W.3d 124, 133 (Tex. App.–San Antonio 2011)).

Regardless of whether a civil or criminal standard applies, we conclude that the trial court's disjunctive jury instruction, given without objection, was not reversible error. The harm to L.D.C., given the jury's other findings and the evidence, was only theoretical, not actual. Accordingly, we reverse the judgment of the court of appeals and render judgment for the State.

_____
Nathan L. Hecht
Justice

Opinion delivered: May 24, 2013