**Opinion filed September 29, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00189-CV

_____

## IN THE MATTER OF J.E.N., A JUVENILE

**On Appeal from the County Court at Law**
**Brown County, Texas**
**Trial Court Cause No. 2520**

## M E M O R A N D U M   O P I N I O N

The State alleged that Appellant, J.E.N., engaged in delinquent conduct as a juvenile by committing the offenses of injury to a disabled individual, burglary of a habitation, and aggravated assault. *See* TEX. FAM. CODE ANN. § 53.04 (West 2022); *see also* TEX. PENAL CODE ANN. §§ 22.04(a), 30.02(a), 22.02(a) (West 2019 & Supp. 2021). Because Appellant was fifteen years old when these offenses were allegedly committed, this proceeding was filed in juvenile court. In response to the State's petition, Appellant pleaded "true" to the first allegation (offense) and "not true" to the second and third allegations (offenses). The State proceeded to trial on the second and third allegations. After an adjudication hearing, the juvenile court found

all allegations to be "true" and adjudicated Appellant to have engaged in delinquent conduct; thereafter, at the disposition hearing, the juvenile court committed Appellant to the Texas Juvenile Justice Department (TJJD) for an indeterminate period of time, not to exceed his nineteenth birthday.

Appellant challenges the legal and factual sufficiency of the evidence to support the juvenile court's findings at *disposition* that (1) commitment to TJJD was in the best interest of Appellant; (2) reasonable efforts were made to prevent or eliminate the need for Appellant to be removed from his home and make it possible for him to return home; and (3) Appellant, in his home, cannot be provided the quality of care and level of support and supervision that he would need to meet the conditions of probation. *See* FAM. § 54.04(i)(1). We reverse and remand.[1]

## I. *Factual Background*

During the summer of 2021, Appellant borrowed $140 from Kenneth Dunlap. After not hearing from Appellant for a few weeks, Dunlap spoke to Appellant's grandfather concerning Appellant's failure to repay the loan. Appellant learned of this conversation from his older brother later that evening and was led to believe that Dunlap had threatened his grandfather with a gun. Appellant went to Dunlap's home that evening and, without an invitation or consent, entered Dunlap's home. Appellant made racial slurs and struck Dunlap's face and head with his fists and the

---

[1]We note that the State did not file a brief. Former Brown County Attorney, Shane Britton, was advised by the clerk of the court of the applicable briefing deadlines; however, he chose, once again, to ignore them. This seems to be his custom despite our efforts to obtain his compliance with the requirements of the Texas Rules of Appellate Procedure and the court's deadlines. *See In re L.W.*, No. 11-20-00165-CV, 2021 WL 126424, at *1 n.2 (Tex. App.—Eastland Jan. 14, 2021, pet. denied) (mem. op.); *Reich v. State*, No. 11-18-00355-CR, 2020 WL 7034631, at *1–2 (Tex. App.—Eastland Nov. 30, 2020, no pet.) (mem. op., not designated for publication). Nevertheless, Mr. Britton's lack of respect for the court and the appellate process did not interfere with our judicial responsibility—that is, under these circumstances, to independently review and analyze the record before us and the merits of Appellant's contentions and claims of error.

butt of a gun. As a result, Dunlap sustained a black eye, a bruise on the side of his face, a knot on the back of his head, and various injuries to his mouth. Appellant was arrested shortly thereafter.

The juvenile court held two detention hearings after Appellant's arrest—the first occurred within two working days of the arrest, and the second occurred approximately two-and-a-half weeks later. At the first detention hearing, Brown County Chief Juvenile Probation Officer Lisa Ritter testified about Appellant's previous supervision with the probation department, his history of assaultive conduct, the nature of the assault that he committed against Dunlap, and the severity of the injuries sustained by Dunlap. Bangs Police Chief Jorge Camarillo testified at the first hearing about Dunlap's injuries and stated that the assault Appellant committed against Dunlap allegedly involved the use of a deadly weapon. The juvenile court concluded from the testimony presented that probable cause existed to find that Appellant had engaged in delinquent conduct and that, given the nature of the offenses committed against Dunlap and Appellant's history of having committed a prior assault against an elderly individual, Appellant should be detained for the next fifteen days because he could be a danger to himself or others.

At the second detention hearing, Brown County Juvenile Probation Officer Kendall Kent testified that the probation department recommended that Appellant's detention be continued because of the nature of the offenses he had committed against Dunlap and his potential to be a danger to the community if he was released from detention. The juvenile court adopted its findings from the first detention hearing and determined that Appellant should remain detained until his adjudication hearing.

Appellant was confined in the Tom Green County Juvenile Justice Department until his adjudication hearing commenced on July 21, 2021. At the

adjudication hearing, the juvenile court found that all allegations against Appellant were "true" beyond a reasonable doubt and adjudicated Appellant as a child who had engaged in delinquent conduct.

Approximately one-and-a-half weeks later, Appellant's disposition hearing was held. The evidence presented by the State focused primarily on three issues: (1) Appellant's lack of remorse; (2) Appellant's previous probationary performance pursuant to a deferred prosecution agreement; and (3) the social history and disposition recommendation for the present adjudication that was completed by the Brown County juvenile probation department. Kent testified, among other things, about Appellant's "cavalier, nonchalant" attitude upon his arrest and stated that Appellant "didn't seem to care about what had happened." Ritter also testified that she observed a "lack of remorse" from Appellant when she met with him a week after he assaulted Dunlap.

Prior to Appellant's assault of Dunlap, Appellant had successfully completed a five-month deferred prosecution probation term, which stemmed from an allegation that Appellant had assaulted his grandfather. However, the evidence revealed that this term of probation was not without its difficulties. Brown County Juvenile Probation Officer Melissa Gomez testified that, with Appellant's previous term of probation, she had observed some disciplinary issues including instances of Appellant yelling and cursing at his mother, threatening to hit her car, and "a couple of disciplinary things at school." Gomez also testified that scheduling issues with Appellant's mother, L.N., resulted in Gomez performing the majority of Appellant's "check-ins" at his school. These scheduling issues also affected Appellant's ability to attend counseling, which resulted in him attending only two sessions during the five-month probationary period.

4

After his release from probation, Appellant's school performance declined. The evidence presented showed that Appellant quit football, failed his STAAR test, and was failing language arts. Ritter testified that Appellant missed the last two weeks of school because L.N. had withdrawn him from school; this withdrawal prevented him from completing the grade that he was currently enrolled in.[2]

Ritter completed the social history and disposition recommendation and testified that the juvenile department's disposition recommendation for Appellant was commitment to TJJD. The basis for this recommendation was three-fold: (1) Appellant was ineligible for placement in any facility that the State had available; (2) the risk and needs component of the department's assessment indicated that Appellant had a *moderate risk* of re-offending; and (3) the underlying adjudication was comprised of three felony offenses that were committed in the same criminal episode. In clarifying Appellant's ineligibility for a post-adjudication placement, Ritter testified that to receive funding from TJJD for placement in a proper facility, the child must be classified as having a *low risk* to re-offend. Because Appellant scored and was designated as a *moderate risk* to re-offend, TJJD refused to fund his placement in any available facility.

When questioned by Appellant's trial counsel, Ritter detailed the requirements of probation for a juvenile adjudicated delinquent. Specifically, Ritter stated that psychiatric evaluations are not typically completed unless the probation office considers placing the child in a residential facility; however, such an evaluation had not been completed in this case. She also testified that a psychiatric evaluation could help identify whether the juvenile needs more intensive counseling or medication.

---

[2]We note that Appellant provided evidence that he had completed the *ninth* grade and had yet to begin the *tenth* grade at the time of his disposition.

In support of his request to be placed on probation, Appellant presented evidence concerning his understanding of the seriousness of the circumstances and his ability to meet the requirements of probation. At the time of the disposition hearing, Appellant had been detained in TJJD for a month and ten days. Appellant testified that he (1) regretted his behavior, (2) would not be a danger to society if he were released and placed on probation, (3) recognized the serious nature of the offenses he had committed, and (4) would not commit another offense like this again. Appellant admitted that he has anger issues and believed that he could benefit from anger management counseling.

L.N. testified that she called the juvenile probation department as Appellant was completing his previous deferred prosecution probation in order to get advice on how to deal with his anger issues. L.N. also testified that she welcomed any assistance that could be provided in learning how to manage Appellant's anger issues, that she would be willing to take him to any scheduled medical appointments and anger management classes, and that she would assure he took any prescribed medications.

With regard to the possibility of being placed on probation, Appellant testified that he understood that probation, if granted, would be different from his previous deferred prosecution probation. Appellant testified that he had a job before being detained in TJJD and that he believed he would be able to work there again if released. L.N. testified that she was committed to following through with everything that Appellant would need to do if he was placed on a two-year probation term.

The majority of the evidence that Appellant presented concerned his means of transportation and the ability to make all necessary appointments if he were to be placed on probation. In testifying about her responsibilities, L.N. stated that she understood that she would need to get Appellant to appointments on time and that

6

her parents would assist her with this responsibility. L.N. explained that during Appellant's previous term of probation, she often had to work when Appellant had scheduled appointments that he was required, but failed, to attend; however, she claimed that she would call and explain why Appellant would not be able to attend an appointment. She also testified that COVID-19 hindered her ability to take him to his scheduled appointments. When questioned about what had changed between the end of Appellant's previous term of probation and now, L.N. testified that she had changed her work schedule to accommodate taking Appellant to his appointments and that she had also confirmed with her employer that she would be able to take time off work to provide transportation for Appellant.

As for why his grandparents did not assist in taking him to his scheduled appointments during his previous term of probation, Appellant explained that he did not ask his grandparents to provide transportation for him at that time. Appellant then clarified that this had changed since his previous term of probation and, prior to his arrest, his grandparents helped drive him to work. Appellant's grandfather also testified that he would help provide transportation for Appellant if he was placed on probation.

L.N. testified there is no CPS or criminal history in her family. She also was working two jobs at the time of the disposition hearing. L.N. testified that Appellant would live with her if he was released from detention but that he would still spend a significant amount of time at his grandparents' house. Both L.N. and Appellant's grandparents lived five-to-ten minutes from Dunlap's home. According to L.N., she understood that, as a condition of probation, Appellant would not be allowed to have any contact with Dunlap. She further stated that she would assure that he complied with this condition.

With regard to Appellant's withdrawal from school, L.N. stated that she did not withdraw Appellant from school, did not condone the withdrawal, and expected him to attend school. L.N. admitted that she had no knowledge of Appellant's failing grades. She testified that she valued her son having a good education and that, prior to the grade in which he was enrolled, he had always made good enough grades to participate in athletics.

Appellant's grandfather was the victim of the previous assaultive offense for which Appellant received deferred prosecution. He testified that, although Appellant did not touch him during the previous incident, he had never seen Appellant lose his temper like he did that day. Appellant's grandfather further testified that he believed Appellant had learned from his mistakes and that he intended to help L.N. care for Appellant and provide any necessary means of transportation. Although Appellant's grandfather stated that he did not understand why Appellant needed strict supervision before, he now understood the need for it and agreed to watch out for Appellant more closely in the future.

In pronouncing its disposition, the juvenile court stated that its decision was based on the seriousness of the offenses that Appellant committed against Dunlap, Appellant's prior history of a similar violent offense, and the juvenile probation department having "tried to deal with this situation, and it [was] continuing to get worse." The juvenile court then committed Appellant to TJJD stating that, for the protection of Appellant and the community, probation was not appropriate.

## II. *Standard of Review*

A juvenile court possesses broad discretion to determine a suitable disposition for a child who has been adjudicated delinquent. *See* FAM. § 54.04; *In re T.E.G.*, 222 S.W.3d 677, 679 (Tex. App.—Eastland 2007, no pet.). Thus, the juvenile court's discretionary decision to commit a child to TJJD is subject to review for an

abuse of discretion. *In re J.P.*, 136 S.W.3d 629, 632 (Tex. 2004); *In re A.G.*, 292 S.W.3d 755, 760–61 (Tex. App.—Eastland 2009, no pet.); *In re T.E.G.*, 222 S.W.3d at 679. The test for an abuse of discretion is whether the juvenile court acted arbitrarily or unreasonably—that is, without reference to guiding rules and principles. *In re T.E.G.*, 222 S.W.3d at 679. Under an abuse of discretion standard, the legal and factual sufficiency of the evidence are relevant factors in assessing whether the juvenile court abused its discretion. *Id.*

Although juvenile cases are classified as civil proceedings, they are "quasi-criminal" in nature. *In re L.D.C.*, 400 S.W.3d 572, 574 (Tex. 2013); *In re M.A.F.*, 966 S.W.2d 448, 450 (Tex. 1998). As such, civil and criminal rules apply at different stages of the same proceeding. *In the Matter of I.F.M.*, 525 S.W.3d 884, 886 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *In re K.H.*, 169 S.W.3d 459, 462 (Tex. App.—Texarkana 2005, no pet.)).

A juvenile court's *disposition* finding, as in the case before us, need not be supported by proof beyond a reasonable doubt. Therefore, we apply the civil standards of review to determine the legal and factual sufficiency of the evidence to support the juvenile court's *disposition* decision. *See In re A.G.*, 292 S.W.3d at 761; *In re T.E.G.*, 222 S.W.3d at 678–79. In a legal sufficiency analysis of the juvenile court's factual findings, we consider the evidence in the light most favorable to its findings and indulge every reasonable inference that supports them. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *In re A.G.*, 292 S.W.3d at 761; *In re T.E.G.*, 222 S.W.3d at 679. We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 827; *In re A.G.*, 292 S.W.3d at 761. Because we recognize that the factfinder is the sole judge of the witnesses' credibility and the weight to be given their testimony, we cannot substitute our judgment for that of the factfinder

provided the evidence falls within the zone of reasonable disagreement. *City of Keller*, 168 S.W.3d at 822; *In re A.G.*, 292 S.W.3d at 761.

In a factual sufficiency analysis, we consider and weigh all the evidence presented and set aside a juvenile court's determination only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *In re A.G.*, 292 S.W.3d at 761; *In re T.E.G.*, 222 S.W.3d at 679–80.

## III. *Analysis*

The guiding principles for committing a child to TJJD are provided in the Texas Family Code. When a juvenile court either places a child on probation outside the child's home or commits a child to TJJD, the court must include in its order its determinations that (1) it is in the child's best interests to be placed outside the child's home; (2) "reasonable efforts" were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and (3) the child, in his home, cannot be provided the quality of care and level of support and supervision that he needs to meet the conditions of probation. FAM. § 54.04(i)(1). The juvenile court's order in this case recited these three findings.

In the matter before us, Appellant argues that the evidence presented at the *disposition* hearing is legally and factually insufficient to support each of the juvenile court's findings during disposition. Because Appellant challenges all disposition findings, we shall discuss each determination in turn.

### A. *The Child's Best Interests Finding*

Appellant contends that the juvenile court did not find, either at the prior detention hearings or at disposition, that it was in Appellant's best interest to be placed outside his home. We disagree.

We note that the juvenile court is not required to make a best interest finding at the detention hearing stage. *See* FAM. § 54.01. Rather, to detain a child prior to adjudication, the juvenile court must make a finding that detention is necessary because one of five circumstances exists, which includes that the child "may be dangerous to himself or may threaten the safety of the public if released." *Id.* § 54.01(e)(4). Ultimately, the juvenile court found that Appellant could be a danger to himself or others.

In an original *disposition*, the juvenile court must find that protection or rehabilitation is needed and that the child's placement outside the home is in the best interest of the child. FAM. § 54.04(c), (i)(1)(A); *In re J.P.*, 136 S.W.3d at 632. Further, in a juvenile case, the best interests of children who engage in serious and repeated delinquent conduct are superseded to the extent that they conflict with public safety. *In re J.P.*, 136 S.W.3d at 633. Appellant and his mother both acknowledged Appellant's anger issues and his need for treatment. Despite this acknowledgment, Appellant asserts that the record reveals that he did not show a disregard for authority and was indeed remorseful for his actions because of the altercation with Dunlap. However, the record is replete with evidence to the contrary—that Appellant lacked remorse for his actions.

Here, the juvenile court at the disposition hearing considered the seriousness of the charged offenses in its determination to commit Appellant to TJJD. Appellant was adjudicated for three felony offenses—injury to a disabled individual, burglary of a habitation, and aggravated assault—and the evidence established the severity of the injuries that Dunlap sustained. Testimony from the juvenile probation officers showed that Appellant's previous deferred prosecution probation concerned the same type of offense—assault against an elderly individual—making the assault committed against Dunlap the second assaultive offense of this nature that Appellant

11

had perpetrated. Moreover, the evidence indicated that Appellant would be living approximately five-to-ten minutes away from Dunlap's home.

Based on the applicable standards of review, we have reviewed the evidence in the light most favorable to the juvenile court's ruling. Irrespective of the competing narratives and contentions advanced by Appellant, the record before us contains sufficient evidence from which the juvenile court could have logically concluded and inferred Appellant's need for rehabilitation, the serious and repetitive nature of his delinquent conduct, and the need to protect the safety of the public. Accordingly, we hold that legally and factually sufficient evidence supports the juvenile court's best interest finding.

B. *The "Reasonable Efforts" Finding*

Appellant further contends that the evidence is legally and factually insufficient to support the juvenile court's "reasonable efforts" determination. Specifically, Appellant argues that, because of his assaultive conduct, neither the State nor the department made *reasonable efforts* to prevent or eliminate the need for Appellant's removal from his home or to make it possible for him to return to his home. According to Appellant, while the juvenile court need not exhaust all alternatives, here the juvenile court provided Appellant with no alternative dispositions when it committed him to TJJD. Based on this record, we agree with Appellant.

Upon Appellant's arrest, he was continuously detained in the Tom Green County Juvenile Justice Center until the disposition hearing commenced. After his arrest, there is no evidence of any efforts made by the State or the juvenile probation department to return Appellant to his home with more stringent community supervision conditions. Nor is there any evidence in the record that the juvenile probation department even considered or evaluated this option. Notably, the

12

evidence before us demonstrates that the department made no efforts to secure potential treatment options or alternative placements for Appellant, other than commitment to TJJD. Further, no evidence was presented as to why commitment to TJJD would be the best option to serve and accommodate Appellant's rehabilitation needs at *this time*.

Nevertheless, the evidence in the record is rife with testimony concerning Appellant's prior probationary performance, which was undoubtedly wanting. But Appellant was successfully released from that term of probation. While this testimony is helpful in evaluating the conditions and adequacy of Appellant's home environment, it cannot act as a substitute for the required reasonable efforts that must be made and pursued by the State and the department to return Appellant to his home after the instant transgression. *See In re A.G.*, 292 S.W.3d at 762.

Appellant does contend that less restrictive placement options were available at this stage but denied to him because of the lack of state funding. However, this argument is not persuasive because Appellant was not eligible for funding in a post-adjudication setting or other facility because of his classification as a moderate risk to re-offend.

In the absence of alternative placement efforts by either the State or the department, we conclude that the juvenile court abused its discretion when it determined that reasonable efforts were made to return Appellant to his home environment. Here, although the evidence in support of the juvenile court's "reasonable efforts" finding may, arguably, survive a legal sufficiency challenge, it cannot, on this record, survive a factual sufficiency challenge. Accordingly, we sustain Appellant's sole issue in part.

Because our holding on this point is dispositive of this appeal, we need not address Appellant's challenge to the third finding in the juvenile court's order. *See* TEX. R. APP. P. 47.1.

## IV. *This Court's Ruling*

We reverse the juvenile court's disposition order and remand this cause for a new disposition hearing. *See* FAM. § 56.01(i).


W. STACY TROTTER
JUSTICE


September 29, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.