966 S.W.2d 448 (1998)
In the Matter of M.A.F., a juvenile, Petitioner.
No. 97-0480.
Supreme Court of Texas.
February 13, 1998.
Rehearing Overruled May 8, 1998.
Charles Louis Roberts, Lauren K. Specht (Murdock), El Paso, for Petitioner.
Jaime E. Esparza, Christina Linda Ford, El Paso, Dan Morales, Austin, Jose M. Gonzalez, El Paso, for Respondent.
OWEN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, HECHT, ENOCH, SPECTOR, BAKER and HANKINSON, Justices, join.
M.A.F., a juvenile, was arrested in 1995 in connection with a fatal shooting. After a jury trial in which the evidence was sharply conflicting, M.A.F. was found to have committed the offense of capital murder and was adjudicated a delinquent. M.A.F. appealed, and the court of appeals affirmed. In this Court, M.A.F. seeks a new trial based on three points of error: (1) that the jury's discovery during deliberations of a marijuana cigarette in the pocket of his jacket entitles M.A.F. to a new trial, (2) that a pretrial "show-up" at the police station tainted a witness's in-court identification, and (3) that M.A.F. received ineffective assistance of counsel. We hold that because the jury received additional evidence after retiring to deliberate, Tex.R.App. P. 30(b)(7) requires a new trial. Accordingly, we reverse the judgement of the court of appeals, ___ S.W.2d ___, and remand this case to the trial court.
On the evening of January 20, 1995, Lionel Bruno Jordan was fatally shot at close range, *449 and his pickup truck was stolen. Shortly after the incident, the police apprehended M.A.F., a thirteen-year-old Mexican National, in the vicinity of the crime. The police took M.A.F. to the crime scene where one of the witnesses, Rene Barroso, could not make a positive identification at that time. Three other witnesses, however, stated that M.A.F. was not the perpetrator of the crime. A search of the crime scene, including the area in which M.A.F. was found, did not produce any physical evidence linking him to the crime.
The police subsequently took M.A.F. to the police station and placed him behind a two-way mirror. He was the only person in this police line-up. The police then allowed the witness Barroso to view M.A.F. through the two-way mirror for approximately fifteen minutes, after which he identified M.A.F. as the assailant, basing the identification on M.A.F.'s build and dark clothing. M.A.F. was subsequently charged with delinquent conduct by committing capital murder pursuant to section 54.03 of the Family Code.
During trial, the two witnesses for the state, Rene Barroso and Israel Reyes, testified that M.A.F. was the assailant. Barroso testified that his identification was based on a five-second view of the shooter from fifty feet away. Reyes also identified M.A.F. as the assailant, testifying that, from a distance of six to seven feet, he observed an individual wearing dark clothes with some type of hood over his head standing over the individual that had been shot. The three witnesses that testified for the defense unequivocally stated that M.A.F. was not the assailant they saw on the night in question.
Deliberations began at 8:15 a.m. on May 31, 1995. At 4:40 p.m., the jurors informed the court that they had been deadlocked all day with a vote of five delinquent and seven nondelinquent. Later that evening, a juror looked through M.A.F.'s jacket, which had been properly admitted into evidence, found a marijuana cigarette, and showed it to the other jurors. The jury notified the court, but no instructions were given, and deliberations continued. Defense counsel did not move at that time for a mistrial. At 9:40 p.m. that evening, the tally indicated five delinquent and seven nondelinquent votes. The jury reconvened the following morning, and by 10:20 a.m., indicated that it had reached a unanimous verdict of delinquency. After the jury returned its verdict, M.A.F.'s counsel moved for a mistrial on the basis of the found marijuana cigarette. The trial court denied that motion.
The trial court sentenced M.A.F. under determinate sentencing to twenty years confinement in the Texas Youth Correction Facility. The court of appeals affirmed. M.A.F. claims before this Court that he is entitled to a new trial because the jury received additional evidence after retiring to deliberate in violation of Texas Rule of Appellate Procedure 30(b)(7). We agree.
We note that both parties rely on Texas Rule of Appellate Procedure 30(b)(7), a rule that applies in criminal cases. Neither party, however, discusses whether this Rule applies to juvenile cases, which are characterized by statute as civil proceedings. See Tex. Fam.Code §§ 51.17, 56.01. As a threshold issue, we must determine whether this appellate rule governs this case.
Rule 30(b)(7) provides that "[a] new trial shall be granted an accused for the following reasons: ... (7) where after retiring to deliberate the jury has received other evidence." While this Rule is now contained in the Rules of Appellate Procedure, it was originally enacted by the Legislature to govern evidence in a criminal case. The predecessor of Rule 30(b) was Article 40.03 of the Code of Criminal Procedure,[1] which was enacted "to guarantee the integrity of the fundamental right to trial by jury by restricting the jury's consideration of evidence to that which is properly introduced during trial." Rogers v. State, 551 S.W.2d 369, 370 (Tex. Crim.App.1977). By mandating a new trial *450 in cases where the jury receives additional evidence after retiring to deliberate, Rule 30(b)(7) continues to serve its original function, effectively barring evidence not admitted during trial. Thus, even though the Rule is contained in the appellate rules, its applicability to evidentiary matters remains unchanged.
Because Rule 30(b) is in the nature of a rule of evidence, the Family Code extends its applicability to juvenile proceedings. Juvenile cases, while classified as civil proceedings, are quasi-criminal in nature. See, e.g., C.E.J. v. State, 788 S.W.2d 849, 852 (Tex. App.Dallas 1990, writ denied). Under the Family Code, juvenile trials are governed by the Rules of Criminal Evidence and by Chapter 38 of the Code of Criminal Procedure. See Tex. Fam.Code § 51.17. Moreover, a trial court's juvenile delinquency finding "must be based on competent evidence admitted at the hearing." Tex. Fam.Code § 54.03(f) (emphasis added). By applying Rule 30(b)(7) to juvenile cases, we effectuate the intent expressed in the Family Code to apply the Rules of Criminal Evidence and to restrict the jury's consideration of evidence not admitted at the hearing. Therefore, because of the unique evidentiary function of Rule 30(b), and in light of the quasi-criminal nature of juvenile proceedings, we conclude that the Rule applies in the present case.
Rule 30(b)(7) requires the trial court to grant a new trial if (1) other evidence is received by the jury after retiring to deliberate, and (2) the evidence is detrimental to the accused. See Stephenson v. State, 571 S.W.2d 174, 176 (Tex.Crim.App.1978). However, "[u]nless there is a fact issue raised on whether the jury actually received the other evidence [Rule 30(b)(7)] requires reversal if the evidence was [detrimental] to the defendant." Rogers, 551 S.W.2d at 370. The State does not argue that the marijuana was in any way admissible in M.A.F.'s delinquency trial, and there was no evidence regarding how or when the marijuana cigarette was placed in M.A.F.'s jacket. The State concedes in its brief to this Court that the marijuana cigarette was "other evidence" not properly admitted during trial and that the jury received this evidence after retiring to deliberate. Therefore, the remaining issue in this case is whether the discovered evidence was detrimental to the accused.
The Court of Criminal Appeals has explained that evidence is detrimental to the accused when "reason and common sense can see it was harmful to the accused." See Collier v. State, 164 Tex.Crim. 91, 297 S.W.2d 160 (1956). However, focus must be on the character of the evidence and not on the effect of such evidence on the jurors. See Garza v. State, 630 S.W.2d 272, 274 (Tex. Crim.App.1981). If the character of the evidence is such that it would be detrimental to the accused, the presumption of injury to the defendant will obtain, and it is unnecessary for the accused to prove that the jurors' votes were influenced by the improper evidence. See id; see also Reed v. State, 841 S.W.2d 55, 59 (Tex.App.El Paso 1992, pet. ref'd).
Our sister court has addressed the detrimental to the accused requirement on several occasions. In Garza, the defendant was convicted of the offense of possession of a controlled substance. 630 S.W.2d at 272-73. On appeal, the defendant claimed that he was entitled to a new trial because the jury, after retiring to deliberate, had received other evidence detrimental to the accused. Id. at 273. Specifically, the jurors had made statements during deliberations that the defendant "had a bad criminal record, that he had killed a man, was a murderer, should be put away, and should be locked up." Id. None of the discussed matters was in evidence. The Court of Criminal Appeals reversed the defendant's conviction, holding that the jurors' references to the defendant's collateral offenses were "clearly detrimental" to the defendant. Id. at 275.
Other decisions have reached similar conclusions. See, e.g., Bearden v. State, 648 S.W.2d 688, 692 (Tex.Crim.App.1983) (holding that evidence was detrimental to the accused when, during deliberations, a juror commented on the alcohol service policies of a defendant nightclub); Alexander v. State, 610 S.W.2d 750, 752 (Tex.Crim.App.1981) (holding that other evidence was detrimental to the accused when juror stated during deliberations *451 that he knew the accused and that "his character was bad"); Hunt v. State, 603 S.W.2d 865, 868-69 (Tex.Crim.App.1980) (holding that evidence was detrimental to the accused when, during deliberations, juror speculated on details of murder based on his Marine Corps training); Stephenson, 571 S.W.2d at 176 (holding that other evidence was detrimental to the accused when, during deliberations, juror claimed to know facts personally, and other jurors claimed to have personal knowledge that one of the witnesses was not truthful); Shivers v. State, 756 S.W.2d 442, 443-44 (Tex.App.Houston [1st Dist.] 1988, no pet.) (holding that other evidence was detrimental to the accused when the jury foreman drove to the crime scene during jury deliberations and reported to the jury that eyewitness's view was not obstructed by tree).
Like Garza, where jurors made references to the defendant's collateral offenses not in evidence, this case requires reversal because the jury not only discussed the marijuana cigarette, but also received actual, concrete evidence indicating that M.A.F. had committed a collateral offense. The discovery of the marijuana cigarette, while not related to the specific crime with which M.A.F. was charged, was clearly detrimental to the accused. Because the evidence is uncontroverted that after retiring to deliberate, the jury received adverse evidence that was not admitted at trial, Texas Rule of Appellate Procedure 30(b)(7) mandates a new trial.
Accordingly, we grant M.A.F.'s application for writ of error and, without hearing oral argument, reverse the judgment of the court of appeals and remand the case to the trial court for a new trial. See Tex.R.App. P. 59.1.
ABBOTT, J., noted his dissent.
NOTES
[1] See Act of May 27, 1965, 59th Leg., R.S., ch. 722, § 1, 1965 Tex. Gen. Laws 317, 476-77, repealed by Act of May 27, 1985, 69th Leg., R.S., ch. 685, § 4, 1985 Tex. Gen Laws 2472, 2473. When the Supreme Court and the Court of Criminal Appeals adopted the Texas Rules of Appellate Procedure, Article 40.03(7) was replaced with almost identical language in Rule 30(b)(7). Id. Now the Rule is found in Texas Rule of Appellate Procedure 21.3(f).