Affirmed and Memorandum Opinion filed July 13, 2006








Affirmed and Memorandum Opinion filed July 13, 2006.

 




 
 
  
 
 




 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-04-00818-CV

_______________

 

 

 

IN THE INTEREST OF J.R.F.

 

 

                                                                                                                                               


On Appeal from the 314th District Court

Harris County, Texas

Trial Court Cause No. 03-09526J

                                                                                                                                               


 

M E M O R
A N D U M  O P I N I O N

In this
juvenile proceeding, appellant,  J.R.F., appeals the trial court=s adjudication of delinquency.  In
two issues, J.R.F. contends the evidence is legally and factually insufficient
to support the trial court=s finding that he engaged in delinquent conduct by committing
theft.  Because all dispositive issues are clearly settled in law, we issue
this memorandum opinion and affirm.  See Tex. R. App. P. 47.4.

 








I.  Standard of Review

In a juvenile
proceeding, the trial court must conduct an adjudication hearing for the
fact-finder to determine whether the juvenile engaged in delinquent conduct.  Tex. Fam. Code Ann. ' 54.03 (Vernon Supp. 2005).  If the
fact-finder determines that the juvenile engaged in delinquent conduct, the
trial court must then conduct a disposition hearing.  Tex. Fam. Code Ann. ' 54.03(h); Tex. Fam. Code Ann. ' 54.04 (Vernon Supp. 2005).  Here,
after conducting an adjudication hearing before the bench, the trial court
found that J.R.F. engaged in delinquent conduct by committing a Class B
misdemeanor theft.  The trial court then conducted a disposition hearing and
committed J.R.F. to the custody of the Texas Youth Commission.

In two
issues, J.R.F. contends the evidence is legally and factually insufficient to
support the finding that he engaged in delinquent conduct by committing a Class
B misdemeanor theft.[1]  Although
juvenile cases are classified as civil proceedings, they are Aquasi‑criminal@ in nature.  In re M.A.F., 966
S.W.2d 448, 450 (Tex. 1998); In re K.H., 169 S.W.3d 459, 461B62  (Tex. App.C Texarkana 2005, no pet.).  Civil and
criminal rules apply at different stages of the same proceeding.  See In re
K.H., 169 S.W.3d at 462; Tex. Fam.
Code Ann. ' 51.17 (Vernon Supp. 2005).  The burden of proof at the
adjudication hearing is the beyond-a-reasonable-doubt standard applicable to
criminal cases.  Tex. Fam. Code Ann.
' 54.03(f).  Therefore, we review the
sufficiency of the evidence to support a finding that a juvenile engaged in
delinquent conduct using the standard applicable to criminal cases.  See In
re K.H., 169 S.W.3d at 462; In re G.A.T., 16 S.W.3d 818, 828 (Tex.
App.CHouston [14th Dist.] 2000, pet.
denied).








Accordingly,
in reviewing the legal sufficiency of the evidence, we review all the evidence
in the light most favorable to the finding to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000).  In reviewing the factual sufficiency of the evidence, we consider all
of the evidence in a neutral light and will set aside the finding only if (1)
the evidence supporting the finding, if taken alone, is too weak to sustain the
finding of guilt beyond a reasonable doubt, or (2) the contrary evidence is so
strong that the State could not have met its burden of proof beyond a
reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484B85 (Tex. Crim. App. 2004).

II. Analysis

A person
commits theft if he unlawfully appropriates property with intent to deprive the
owner of the property. See Tex.
Pen. Code Ann. ' 31.03(a) (Vernon Supp. 2005).  AAppropriate@ means Ato acquire or otherwise exercise
control over property other than real property.@  See Tex. Pen. Code Ann. ' 31.01(4)(b) (Vernon Supp. 2005). 
Appropriation of property is unlawful if it is without the owner=s effective consent, or the property
is stolen and the actor appropriates the property knowing it was stolen by
another.  See Tex. Pen. Code Ann.
' 31.03(b)(1), (2) (Vernon Supp.
2005).  A theft is a Class B misdemeanor if the value of the property stolen is
$50 or more, but less than $500.  See Tex.
Pen. Code Ann. ' 31.03(e)(2)(A)(i) (Vernon Supp. 2005).

A.        The Evidence

J.R.F.
was accused of stealing a CD player, a headset, and thirty CDs owned by
Katherine Conroy, a fellow student at his high school.  The State presented
three witnesses at trial: Conroy; Linda Prince, a school district police
officer stationed at the school; and David Sablatora, an assistant principal. 
These witnesses testified regarding the following events on November 12, 2003,
the day of the alleged offense.








At
approximately 7:45 a.m., Conroy left her bag either inside or outside her
locker before she went to class.[2]  Later that
morning, someone turned in to Officer Prince a bag that had been found in a
walkway.  At approximately 9:30 a.m., Officer Prince summoned Conroy after
finding her identification in the bag.  Conroy determined that her CD player, a
headset, a case containing at least thirty CDs, and a $20 bill were missing.

At approximately
2:30 p.m., Principal Sablatora was speaking with a student, Kelesha Williams,
at the bus area. Kalesha was wearing a headset and listening to a CD player. 
Officer Prince approached the bus area and noticed that this CD player and
headset  matched the description of Conroy=s CD player and headset.  Officer
Prince asked Kalesha where she got them.  Based on J.R.F.=s hearsay objection, Officer Prince
and Sablatora did not testify regarding Kalesha=s response, if any, or provide
further details of this conversation.  In any event, as a result of this
conversation, Officer Prince wanted to interview J.R.F.

Sablatora
found J.R.F. and escorted him to an office.  Officer Prince was not in the
office while Sablatora spoke with J.R.F.  Sablatora asked J.R.F. if he had
anything in his backpack that did not belong to him, and J.R.F. said, Ano.@  Sablatora asked J.R.F. to empty his
backpack and pockets.  J.R.F. had a CD case containing some CDs in the
backpack. Sablatora asked where J.R.F. got them, and he replied that he found
them on the bus. 








After
Sablatora spoke with J.R.F., he found Officer Prince and gave her the CD case. 
According to Officer Prince, it matched the description of Conroy=s  property.  Officer Prince asked
J.R.F. where he got the CD case.  He responded that he did not Aknow where it came from,@ but he denied stealing it.[3] 
At one point, she asked whether another student gave him the items, and he
said, Ano.@  Officer Prince called the Harris
County District Attorney=s office to file a charge, and she arrested J.R.F. the next
day.  At trial, Conroy testified that she did not know J.R.F. and did not give
him permission to take her property.

J.R.F.
testified at trial and denied stealing Conroy=s property.  He explained that he
found the backpack, but not the CDs, on the bus.  He claimed that earlier in
the day, a fellow student named ANick@ gave him the CD player and CDs to
use for the day, and J.R.F. did not know they were stolen.  After one class
period, J.R.F. loaned the CD player, but not the CDs, to another student named AAmiria,@ who then gave it to Kalesha.  Before
boarding the bus, J.R.F. was looking for Amiria to get the CD player back when
Sablatora found him.

B.        Sufficiency of the Evidence








J.R.F.
contends there is no evidence he stole Conroy=s property because no witness saw him
take the items in question.  However, some of the items (the CDs) were found in
J.R.F.=s possession.  Texas law Ahas long permitted the conviction of
a person for theft if the evidence shows him to have been found in possession
of recently stolen property without offering an explanation inconsistent with
guilt when first called upon directly or circumstantially to do so.@  Chavez v. State, 843 S.W.2d
586, 587 (Tex. Crim. App. 1992) (citing Sutherlin v. State, 682 S.W.2d
546 (Tex. Crim. App. 1984)); see Poncio v. State, 185 S.W.3d 904,
904B05 (Tex. Crim. App. 2006); James
v. State, 48 S.W.3d 482, 485 (Tex. App.CHouston [14th Dist.] 2001, no pet.). 
This rule is based upon a belief that those who steal property keep it for some
time and those who acquire property honestly during such an interval are
typically willing to explain how they obtained it.  Chavez, 843 S.W.2d
at 588.  This unexplained possession of recently stolen property permits an
inference of guilt for the offense of theft.  See Sutherlin, 682 S.W.2d
at 549; James, 48 S.W.3d at 485; see also Chavez, 843 S.W.2d at
587B88.[4] 
However, before the inference may be invoked, the State must establish that the
possession was personal, recent, unexplained, and involved a distinct and
conscious assertion of a right to the property by the defendant.  Sutherlin,
682 S.W.2d at 549; see James, 48 S.W.3d at 485.

Personal Possession and Distinct and
Conscious Assertion of a Right to the Property

We will
consider these two requirements together because the same evidence supports
both.  The trial court could have rationally concluded that J.R.F.=s possession of the CDs was personal
and that he exercised a distinct and conscious assertion of a right to the CDs
because they were found in his backpack.  See Marbles v. State, 874
S.W.2d 225, 227B28 (Tex. App.CHouston [1st Dist.] 1994, no pet.) (holding defendant=s possession of stolen camcorder was
personal because it was found in the trunk of car he owned and he did not want
the car released to anyone else following his arrest).  Although J.R.F. later
claimed at trial that he found the backpack on the bus, he had control of the
backpack at the time the stolen items were discovered even if the backpack did
not belong to him.

Recent
Possession








Ordinarily,
whether possession of stolen property is Arecent@ is a question of fact to be
determined in light of all the circumstances.  See Sutherlin, 682 S.W.2d
at 549; Buchanan v. State, 780 S.W.2d 467, 470 (Tex. App.CDallas 1989, pet. ref=d).  Here, Conroy=s property went missing sometime
after 7:45 a.m. when she left her bag in, or by, her locker.  Some of the property
was found in J.R.F.=s possession shortly after 2:30 p.m. that afternoon.  Courts
have characterized much longer periods between the offense and the defendant=s possession as recent for purposes
of the unexplained-possession inference when judged according to the particular
circumstances.  See, e.g., Marbles, 874 S.W.2d at 227 (upholding
finding that possession of camcorder two and one-half months after it was
stolen was recent).  Here, the trial court could have rationally characterized
J.R.F.=s possession of CDs that were stolen
approximately seven hours earlier during the same school day as recent.  See
Buchanan, 780 S.W.2d at 470 (finding that defendant=s possession of driver=s license two days after it was
stolen was recent).

AUnexplained@ Possession  

If the
defendant offers an explanation for his possession of the stolen property, the
record must demonstrate the account is false or unreasonable before the
evidence will be deemed sufficient to support a conviction.  Adams v. State,
552 S.W.2d 812, 815 (Tex. Crim. App. 1977); Taylor v. State, 921 S.W.2d
740, 744 (Tex. App.CEl Paso 1996, no pet.); see James, 48 S.W.3d at
485B86.  Whether an explanation is true
or reasonable is a question of fact, and the fact-finder is not required to
accept the defendant=s explanation.  Prodan v. State, 574 S.W.2d 100, 103
(Tex. Crim. App. 1978); Adams, 552 S.W.2d at 815; James, 48
S.W.3d at 486B87.

J.R.F.
provided an explanation for possessing the stolen CDs when first called upon to
do so:  when they were discovered in his backpack, he told Sablatora he found
them on the bus.  However, the trial court, as fact-finder, could have
reasonably concluded that J.R.F.=s  explanation was false.








Initially,
we point out that, in many cases in which courts determined a defendant=s explanation was false or
unreasonable, either the State presented evidence from some other source
demonstrating it was false, or the explanation was, in itself, obviously
unreasonable.  See, e.g., Adams, 552 S.W.2d at 813B15 (defendant=s explanation to police that stolen
television found in trunk of his car was given to him by his mother refuted by
mother=s denial that she gave it to him and
his attempt to sell it to a known Afence@); Callahan v. State, 502
S.W.2d 3, 6B7 (Tex. Crim. App. 1973) (defendant=s explanation for possessing whiskey
bottles shortly after they were stolen from liquor store was Atoo tall a tale to swallow@; defendant claimed he and
co-defendant were at a convenience store next to the liquor store when two
complete strangers approached them in the middle of the night and gave them
$5.00 each to hold the whiskey bottles until the next evening); Dixon v.
State, 43 S.W.3d 548, 553 (Tex. App.CTexarkana 2001, no pet.) (defendant=s explanation that stolen property in
his possession belonged to him or his girlfriend refuted by victim=s identification of the property as
hers and fact that one item contained victim=s initials). 

We
recognize that here, the State did not offer evidence directly contradicting
J.R.F.=s explanation.  Sablatora agreed on
cross-examination that he did not see whether or not J.R.F. found the CDs on
the bus.  Sablatora did testify that he did not believe J.R.F.=s explanation based on his conversation
with Kalesha; however, neither Sablatora nor any other witness provided details
regarding this conversation.  Further, a student=s explanation in a school setting
that he found a CD case containing CDs on the bus is not, in itself,
unreasonable. Nonetheless, the falsity of an explanation may be shown by
circumstantial evidence.  Adams, 552 S.W.2d at 815; James, 48
S.W.3d at 486.  Here, J.R.F.=s other inconsistent statements and his contradictory trial
testimony allowed the trial court to reject his explanation that he found the
CDs on the bus.

When
Sablatora started questioning J.R.F., he asked if J.R.F. had anything in his
backpack that did not belong to him, and J.R.F. answered Ano.@  Yet, moments later, the CDs were
discovered in his backpack.  Therefore, the trial court could have questioned
J.R.F.=s overall credibility based on this
untruthful answer.  Further, the trial court could have concluded that J.R.F.
would not have tried to conceal the fact that the CDs were in his backpack if
he had truly found them on the bus.








Then,
shortly after J.R.F. told Principal Sablatora he found the case containing the
CDs on the bus, he told Officer Prince he did not Aknow where it came from.@  Because this statement is somewhat
vague, it is not necessarily inconsistent with his explanation that he found
the CDs on the bus; i.e., he could have found them on the bus yet not known the
owner.  However, the trial court could have inferred that J.R.F. would have
given the same explanation when confronted by a police officer a few minutes
later if he had truly found them on the bus as he told Sablatora.  

Most
significantly, at trial, J.R.F. gave an entirely different explanation than the
one he gave to Sablatora.  Although he told Sablatora that he found the CDs on
the bus, he testified at trial that ANick@ gave them to him.[5] 
Therefore, J.R.F. allowed the trial court to conclude that his earlier,
seemingly reasonable, explanation to Sablatora was false by deciding to testify
and provide a different explanation.[6]








J.R.F.
suggests that his testimony claiming Nick gave him the CDs renders the evidence
insufficient to support the trial court=s determination that he committed
theft.  However, the State is required to refute only the explanation made when
the defendant is first found in possession of recently stolen propertyCnot an explanation made for the first
time at trial.  See Barnes v. State, 520 S.W.2d 401, 403 (Tex. Crim.
App. 1975); Simmons v. State, 493 S.W.2d 937, 939 (Tex. Crim. App.
1973); Taylor, 921 S.W.2d at 744.  Accordingly, the finding that J.R.F.=s explanation to Sablatora was false
supports an inference that he stole the CDs notwithstanding his later claim at
trial that Nick gave them to him.  Nonetheless, the record did rebut J.R.F.=s claim that Nick gave him the CDs
because he earlier denied to Officer Prince that another student gave them to
him.  Morever, we must note that, as we have discussed, J.R.F.=s testimony allowed the trial court
to doubt his earlier inconsistent explanation to Sablatora; but that does not
mean the trial court was required to accept his testimony.  Instead, because
appellant gave two conflicting stories, the trial court was entitled to, and
obviously did, believe that neither was true.

In sum,
when Sablatora first confronted J.R.F. and asked if he had any items in his
backpack that did not belong to him, he answered Ano.@  Moments later, the stolen CDs were
found in his backpack.  He then told Sablatora that he found them on the bus. 
Shortly thereafter, he told Officer Prince that he did not did not Aknow where it came from.@  Then, he denied that another
student gave them to him.  Subsequently, he testified at trial that another
student named ANick@ gave them to him.  Consequently, based on J.R.F.=s  inconsistent claims, the trial
court could have rationally disbelieved his explanation that he possessed the
stolen CDs because he found them on the bus.  Therefore, J.R.F.=s Aunexplained@ possession of the recently stolen
CDs supported the inference that he stole them.

Finally,
we note that J.R.F. was not found in possession of the stolen CD player and
headset.  However, when various items of property are stolen at the same time,
recent, unexplained, personal possession of any one item is sufficient to
support a conviction for theft of all stolen items.  Steward v. State,
830 S.W.2d 771, 775 (Tex. App.CHouston [14th Dist.] 1992, no pet.) (citing Hite v. State,
650 S.W.2d 778, 781 (Tex. Crim. App. 1983)).  Here, all the stolen items were
in Conroy=s bag when she left it in, or by, her locker that morning.  Within two
hours, someone had found the bag in a walkway and turned it in, and the
contents, except Conroy=s identification, were missing.  Thus, the trial court could
have reasonably inferred that the bag and its contents were removed from the
location where Conroy left them at one time.  Therefore, J.R.F.=s possession of the CDs is sufficient
to support the adjudication that he committed theft of all the property. 
Nevertheless, theft of the CDs alone would support an adjudication that he
committed Class B misdemeanor theft because Conroy=s testimony established that the CDs
were worth in total between $50 and $500.  See Tex. Pen. Code Ann. ' 31.03(e)(2)(A)(i).








Accordingly,
we conclude the trial court could have found the essential elements of the
offense of theft beyond a reasonable doubt.  See King, 29 S.W.3d at
562.  We further conclude that the evidence supporting the trial court=s finding, if taken alone, is not too
weak to sustain the determination that J.R.F. committed theft beyond a
reasonable doubt, and the contrary evidence is not so strong that the State
could not have met its burden of proof beyond a reasonable doubt.  See
Zuniga, 144 S.W.3d at 484B85.  Because the evidence is legally and factually sufficient
to support the adjudication of delinquency, we overrule J.R.F.=s two issues.

The
judgment of the trial court is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed July 13, 2006.

Panel consists of Justices Hudson,
Frost, and Seymore.

 

 









[1]  J.R.F. challenges only the determination at the
adjudication hearing that he engaged in delinquent conduct; he does not
challenge the disposition portion of the proceeding.





[2]  Conroy was not sure whether she left her bag inside
or outside her locker.  She stated she had never left it outside her locker
before, but it was possible she did so on this occasion.





[3]  J.R.F. admitted only to stealing a calculator that
was also found in his backpack.





[4]  Although the rule was often denominated a Apresumption@ in
earlier opinions of the Court of Criminal Appeals, the court has since
clarified that Athe rule merely states conditions under which
reviewing courts may regard the evidence as sufficient for a rational finding
of guilt.@  See Chavez, 843 S.W.2d at 587B88 (citing Hardesty v. State, 656 S.W.2d 73, 76B77 (Tex. Crim. App. 1983)); Sutherlin, 682
S.W.2d at 549.





[5]  Although J.R.F. attempted to clarify at trial that
he found the backpack, but not the CDs, on the bus, Sablatora=s testimony was clear that J.R.F. told him he found
the CDs on the bus. 





[6]  When evaluating the sufficiency of the evidence, we
consider all the evidence presented at trial by both the State and the
defendant; therefore, we may consider J.R.F.=s
testimony when determining whether there is sufficient evidence that his
explanation to Sablatora was false.  See Brimage v. State, 918 S.W.2d
466, 470, n.1 (Tex. Crim. App. 1994); Cook v. State, 858 S.W.2d 467, 470
(Tex. Crim. App. 1993); Madden v. State, 799 S.W.2d 683, 686 (Tex. Crim.
App. 1990); Castillo v. State, 79 S.W.3d 817, 823 (Tex. App.CDallas 2002, pet. ref=d).