**Opinion issued October 31, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00754-CV

———————————

## IN THE MATTER OF G.G., A CHILD

---

On Appeal from the 313th District Court
Harris County, Texas
Trial Court Case No. 2016-01145J

---

## MEMORANDUM OPINION

The State petitioned the trial court to adjudge G.G., a juvenile, as delinquent based on charges of (1) assault of a public servant; and (2) escape from the custody of a peace officer while under arrest. *See* TEX. PENAL CODE §§ 22.01(b)(1), 38.06. G.G. pleaded "not true" to both charges. The jury that heard the case found the allegation of assault was not true, but it found the allegation of escape to be true.

On appeal, G.G. contends that (1) the evidence is insufficient to support the jury's finding that he engaged in delinquent conduct constituting the offense of escape while under arrest, and (2) the trial court reversibly erred by refusing to submit a definition of arrest in the jury charge. We hold that the evidence is legally sufficient to support the judgment and any error in refusing the definition was harmless. We therefore affirm.

## Background

One school day in February 2016, a teacher in Cypress Ridge High School called Assistant Principal Emily Francis to her classroom because one of the students—G.G.—had fallen asleep and would not awaken. When Francis arrived, she roused G.G. by speaking to him loudly and asked him to follow her to her office. Once they were seated in the office, Francis began to ask G.G. questions. During their conversation, Francis noticed that G.G.'s eyes were extremely red and he appeared to be very drowsy. His speech was slurred as he answered her questions. Francis radioed for the school nurse, Cindy McCloud, to come to her office to determine whether G.G. needed medical treatment. While they waited for McCloud to arrive, G.G. informed Francis that he did not want to wait and left Francis's office.

Francis followed G.G. and radioed another assistant principal for assistance. Francis and the other assistant principal guided G.G. to the nurse's office. When they arrived, McCloud took G.G. into a private room to perform an impairment

2

assessment test, which is designed to determine whether a student is under the influence of alcohol or other substances.   McCloud determined that G.G. was under the influence of drugs.

Francis and G.G. returned to Francis's office where Francis, with another administrator present, told G.G. the results of the assessment.  G.G. became angry, stood up, and forced his way out of the office. While Francis radioed for assistance, the other administrator followed G.G. as he entered the main hall and continued walking away.  Officer T. Brooks of the school district's police force, who had answered Francis's radio call, took charge of the situation and began talking with G.G.

Officer Brooks and Assistant Principal Richard Dixon attempted to restrain G.G. to keep him from leaving the building.  While they were struggling to restrain G.G., G.G. head-butted Dixon in the face.  When Officer Brooks was finally able to restrain G.G., he placed G.G.'s hands behind his back, handcuffed him, and escorted him to the principal's office. When they arrived, Officer Brooks informed G.G. that he was being detained until he got the district attorney to accept charges for assaulting a public servant. Officer Brooks then called the district attorney's office, which accepted the charges.  Officer Brooks informed G.G. that he was formally under arrest for assault on a public servant.

Once Officer Brooks's partner arrived at the office, the officers prepared to escort G.G. to the patrol car. They each stood beside G.G., placed an arm on G.G.'s arm, and began to walk with him from the office to the patrol car. Within a minute or so after they left the office, G.G. broke away from the officers and, still in handcuffs, ran through the busy school cafeteria, out the exit door, and into the school parking lot. A chase ensued, and the officers eventually captured G.G. and took him into custody.

## Discussion

### I. Evidentiary sufficiency

G.G. contends that the evidence was legally and factually insufficient to support the jury's verdict that G.G. engaged in delinquent conduct constituting the offense of escape from police custody while under arrest for the assault of a public servant.

#### A. Standard of review and applicable law

Although they are civil proceedings, juvenile cases are "quasi-criminal" in nature. *In re M.A.F.*, 966 S.W.2d 448, 450 (Tex. 1998); *In re T.W.C.*, 258 S.W.2d 218, 222 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Civil and criminal rules apply at different stages of the same proceeding. *In re S.W.*, No. 01-12-01089-CV, 2013 WL 6097794, at *2 (Tex. App.—Houston [1st Dist.] Nov. 19, 2013, no pet.) (mem. op.) (citing *In re K.H.*, 169 S.W.3d 459, 462 (Tex. App.—Texarkana 2005,

4

no pet.)); *see also* TEX. FAM. CODE § 51.17 (outlining rules of procedure and evidence applying to juvenile proceedings).

A trial court may adjudicate a juvenile as delinquent only if it finds beyond a reasonable doubt that the juvenile committed the offense charged. TEX. FAM. CODE § 54.03(f). Accordingly, we review challenges to the sufficiency of the evidence to support a finding that a juvenile engaged in delinquent conduct using the standards applicable to criminal cases. *In re S.W.*, 2013 WL 6097794, at *2; *In re C.J.*, 285 S.W.3d 53, 55–56 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In evaluating evidentiary sufficiency, we apply the standard adopted by the Texas Court of Criminal Appeals, as set out in *Jackson v. Virginia*. *In re S.W.*, 2013 WL 6097794, at *2 (first citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); and then citing *In re M.C.S.*, 327 S.W.3d 802, 805 (Tex. App.—Fort Worth 2010, no pet.)).

Using this standard, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). Under the *Jackson* standard, evidence may be insufficient in either of two circumstances: (1) the record contains no evidence, or merely a

"modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). We presume that the fact finder resolved any conflicts in the evidence in favor of the verdict and defer to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We consider circumstantial evidence to be as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

Pertinent to this case, the Texas Penal Code provides that a person commits the offense of escape "if the person escapes from custody when the person . . . is under arrest for, lawfully detained for, charged with, or convicted of an offense."

TEX. PENAL CODE § 38.06(a)(1). G.G. specifically challenges that the evidence was insufficient to prove that he reasonably believed he was under arrest when he escaped from Officer Brooks. In his own testimony, G.G. claimed that Officer Brooks never told him that he was under arrest. G.G. further claimed that he did not know he was under arrest when he ran through the cafeteria wearing handcuffs.

Whether an officer tells a suspect that he is under arrest, however, is neither sufficient, standing alone, nor necessary to show that an arrest occurred. *See Medford v. State*, 13 S.W.3d 769, 772–73 (Tex. Crim. App. 2000); *Castillo v. State*, 404 S.W.3d 557 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). In *Medford v. State*, the Court of Criminal Appeals reiterated its observation in *Smith v. State*, 219 S.W.2d 454 (Tex. Crim. App. 1949), that "t]he mere fact that an officer makes the statement to an accused that he is under arrest does not complete that arrest. *There must be custody or detention and submission to such arrest*." *Smith*, 219 S.W.3d at 456, *quoted in Medford*, 13 S.W.3d at 772–73 (adding emphasis). In devising a definition of "arrest" for purposes of the escape statute, the *Medford* Court focused on whether "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" 13 S.W.3d 769, 773 (Tex. Crim. App. 2000) (quoting *United States v. Corral-Franco*, 848 F.2d 536, 540 (5th Cir. 1988)).

7

Following *Medford*, this Court held in *Castillo* that legally sufficient evidence supported a finding that the defendant escaped from custody while under arrest even though the defendant had not been handcuffed or told that he was under arrest. 404 S.W.3d at 561. The evidence showed that:

- officers informed the defendant he was being taken back to the house for a marijuana investigation;

- the defendant had been told that the officers had observed him at the house, where the defendant had taken a package containing marijuana from a truck into the house;

- the defendant saw the officers discover similar packages of marijuana in the black truck, which gave them probable cause to arrest him; and

- the officers had detained the defendant in the back seat of a patrol car, thereby restricting his freedom of movement to the degree which the law associates with formal arrest.

*Id.* at 563.

In this case, the evidence shows that school officials informed G.G. that they suspected he was under the influence of drugs. When G.G. tried to leave the building, he was stopped by a school official and an altercation ensued. Officer Brooks forcibly restrained G.G., placed him in handcuffs with his hands behind his back, and escorted him to a school office. G.G. waited there with Officer Brooks until Brooks completed his telephone call to the district attorney and his partner arrived. The officers prepared to escort G.G. to the patrol car by standing on either side of G.G. Each officer placed an arm over one of G.G.'s arms, and they proceeded

8

out of the office and into the hall in this manner. After complying for a minute or two, G.G., still in handcuffs, broke away from the officers and ran out of the school. Even without an officer's declaration, a reasonable person would have understood that he was under arrest.

Further, the jury was entitled to disbelieve G.G. as to whether Officer Brooks told him he was under arrest. Contrary to G.G.'s account, Officer Brooks testified that he informed G.G. that he was under arrest while they were in the principal's office. Afterward, while Officer Brooks and his partner were escorting G.G. in handcuffs to the patrol car, G.G. broke free and ran away from them. Accordingly, we hold that sufficient evidence supports the jury's finding that G.G. committed the offense of escape.

## II.   Jury charge error

G.G. also contends that the trial court erred in overruling his objection to the definition of "arrest" submitted in the jury charge and in refusing to further instruct the jury on his definition of arrest, derived from *Medford*. G.G.'s proposed instruction includes the statement that "any arrest is complete only if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with a formal arrest."

The trial court's charge in this case instructed the jury, "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." This instruction is a verbatim recitation of article 15.22 of the Texas Code of Criminal Procedure.

G.G. complains that the trial court erred in overruling his objection and refusing his tendered instruction, and that this error harmed his substantial rights because the submitted definition did not accurately inform the jury about the law of arrest as it applies to his case. The jury sent out a note during deliberations questioning the definition, asking "Does the respondent have to know and understand that he is under arrest to intentionally and knowingly escape?" The trial court responded by telling the jury to "refer to the charge and keep deliberating."

In *Medford*, the Court of Criminal Appeals determined that the definition of "arrest" found in article 15.22 was not useful as applied to the escape statute because arrest is defined as being taken into custody, and custody is defined as being under arrest. 13 S.W.3d at 772. This becomes problematic when distinguishing between evading arrest, resisting arrest, and escape. *See Warner v. State*, 257 S.W.3d 243, 247 (Tex. Crim. App. 2008). The Court's jury definition of "arrest," for purposes of the escape statute, provides that

> an "arrest" is complete when a person's liberty of movement is
> successfully restricted or restrained, whether this is achieved by an

10

officer's physical force or the suspect's submission to the officer's authority. Furthermore, an arrest is complete only if a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.

*Id.* at 773. By incorporating a reasonable-person standard, the definition directs the jury to consider the nature of the official restraint from an objective standpoint rather than from the suspect's own perception or understanding.

In this case, G.G. preserved his complaint by timely objecting to the charge, but we conclude that any error in refusing to submit the instruction was harmless. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). The charge as submitted did not ask the jury to consider pre-arrest evasion or resistance, where the evidence was in dispute. The escape charge arises out of the circumstances that occurred after Officer Brooks placed G.G. in handcuffs, when G.G. already knew he was suspected of having used drugs. The only conflict pertaining to the arrest issue concerned whether Officer Brooks told G.G. he was under arrest: G.G. denied that Officer Brooks made any such statement and did not believe he was under arrest. Even crediting G.G.'s testimony on this issue, it concerns whether G.G. subjectively understood that he was under arrest, which is not required under *Medford*. *See* 13 S.W.3d at 773.

The jury's note sent during deliberations, which questioned whether to consider G.G.'s subjective understanding that he was under arrest, does not

11

demonstrate any harm resulting from the trial court's refusal to submit G.G.'s requested instruction. The requested instruction tracked *Medford*, which instructs the jury to use a reasonable-person standard to evaluate whether an arrest occurred—not to consider the suspect's subjective knowledge. The trial court's instruction did not so limit the jury; thus, as instructed, the jury could have applied a subjective standard, which would have inured to G.G.'s benefit. Accordingly, we hold that the failure to include the instruction did not result in an improper verdict or cause G.G. harm. *See Almanza*, 686 S.W.2d at 171.

## Conclusion

We affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Brown.