Opinion issued February 26, 2026



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-24-00246-CV

### NO. 01-24-00247-CV

————————————

## IN THE MATTER OF D. L. A.

---

### On Appeal from the 314th District Court
### Harris County, Texas
### Trial Court Case No. 2022-01509J
### Trial Court Case No. 2022-01510J

---

## MEMORANDUM OPINION

Appellant D.L.A., a juvenile, appeals from the trial court's orders finding that he engaged in delinquent conduct by committing robbery against two complainants. In one issue, appellant argues the trial court erred by denying his motion for directed verdict because the evidence was legally insufficient to show

that he committed robbery. We affirm the trial court's judgment because the complainants' testimony alone was sufficient to show that D.L.A. committed robbery.

**Background**

Around 6:00 p.m. on August 15, 2022, Gloria Castillo parked her car in the Burlington Coat Factory parking lot on South Post Oak in southwest Houston. She turned off the engine and was reaching for her purse when she felt someone pulling on her door and trying to open it. When she turned to look, she saw a young man in a "red hoodie" pointing a weapon at her. He was aiming a gun at her and demanding that she open the door. Castillo was afraid and "thought he was going to shoot at me." Castillo testified the man who held the gun was accompanied by another young man wearing a yellow sweatshirt. Castillo did not open the door, and the man did not enter the car.

Sam Melrose, a supervisor at Burlington had just left work and was sitting in his car near Castillo's car around 6:00 p.m. that day. He saw two young black men run in front of him and approach Castillo's vehicle. He saw one of them point a gun at Castillo's window and, though his car doors were closed, he heard them yelling at her and telling her to get out of the car. He recalled that the young men were about the same height, and one was wearing a yellow pullover or sweater. After about a minute, Melrose got out of his car and told them to stop.

2

The two men then approached Melrose and demanded his keys. Melrose testified that they pointed the gun at him and threatened to shoot. Melrose recognized the men, generally, because he had been tracking them for weeks as part of his job and in relation to other incidents.[1] Melrose assumed the gun might be fake, but he was nevertheless afraid that he would be hurt. When he refused to give them his keys, they grabbed him, and the man in the yellow sweater hit him on the head with the gun. The gun broke, and the pieces fell to the ground. Melrose began to laugh in relief while still wrestling with the man who had hit him. The other man said, "Let's leave," to Melrose's assailant, and the two men walked away.

A short time later, two young black men, one wearing a "black hoodie" and the other wearing a "yellow hoodie," stole a blue Nissan Rogue SUV at gunpoint from a woman in the parking lot of Food Town grocery store on Fondren Road in southwest Houston, about ten minutes from the Burlington Coat Factory parking lot. Later the same day, video surveillance recorded D.L.A. get out of a blue SUV at the Chevron on Hiram Clarke Road. He was wearing a "yellow hoodie," and he took a woman's purse.

---

[1] Melrose testified that, although it was unconfirmed, it was his belief that D.L.A. and his accomplice had been seen on surveillance footage from Burlington Coat Factory on more than one day. He recognized the yellow "hoodie" or sweater as having been worn more than once.

The Houston Police Department was investigating serial robberies in the southwest Houston area, and it located the stolen blue Nissan Rogue parked near an apartment on Taintor Street, which was in the middle of a larger apartment complex near West Airport Road and Hiram Clarke Road. On August 18, 2022, a Houston Police officer conducting surveillance in an unmarked car observed D.L.A. put a black backpack in the Nissan Rogue, pick up a second man, who had medium-length dreadlocks, and drive away. The officer asked other officers in the immediate area to initiate a felony traffic stop because they knew the vehicle was stolen. When marked police cars attempted to pull the vehicle over, a short pursuit ensued and ended in a crash. D.L.A., the man with the dreadlocks, and a third man who had been in the backseat were apprehended after they fled on foot. The Nissan Rogue was towed to a "vehicle exam building" for processing, where the police found a yellow hoodie, a black backpack, and a pellet gun inside the backpack.

After D.L.A. was arrested, and in light of the circumstantial evidence, officers prepared a photographic array from which both Castillo and Melrose identified D.L.A. Both Castillo and Melrose also identified D.L.A. in open court. Castillo said he was the person who pointed the gun at her. Melrose said D.L.A. was the person who physically attacked him. In addition, the surveillance officer identified D.L.A. in court as the person who drove the blue Nissan Rogue on August 18, 2022.

4

The State charged D.L.A. with delinquent conduct by two petitions, one alleging that he committed the robbery of Castillo (Cause No. 2022-01509J) and Melrose (Cause No. 2022-1510J). The trial court held an adjudication hearing at which Castillo and Melrose testified, along with a Houston Police Department detective who administered the photographic lineups, the HPD crime scene investigator who examined the Nissan Rogue and collected evidence, a former HPD detective who compiled the photo arrays after D.L.A. was arrested, and a witness to the robbery of the Nissan Rogue. Although Castillo and Melrose identified D.L.A. both before and during trial, the State also presented evidence about the robbery of the Nissan Rogue, the purse-snatching at the gas station, and the final apprehension of D.L.A. after police tracked down the stolen Nissan Rogue.

Throughout trial, D.L.A.'s attorney repeatedly objected to the admission of exhibits related to the extraneous offenses on the grounds that it was improper character evidence related to D.L.A.'s alleged "character" for wearing a yellow hoodie and that the exhibits, such as aerial maps showing the relative locations where events transpired or photographs of the Nissan Rogue, did not include images of D.L.A. or directly link D.L.A. to the robberies of Castillo and Melrose. The State argued that the extraneous offense evidence was offered for the purpose

5

of identity, to connect D.L.A. to the Castillo and Melrose robberies. The court admitted the evidence.

At the close of evidence, D.L.A. moved for a directed verdict. His counsel argued that the State did not prove beyond a reasonable doubt that D.L.A. was the perpetrator of the robberies of Castillo and Melrose. He argued that inconsistencies in Castillo's testimony rendered her in-court identification unreliable. Castillo prefaced some of her affirmative answers to questioning with the word "possibly," she testified that the man who aimed a gun at her wore a red hoodie, and she said she did not see the man who wore a yellow hoodie. D.L.A. pointed out that Melrose said it was difficult to identify the accomplice because he was wearing a mask. D.L.A. argued that the crime scene investigator who examined and collected evidence from the Nissan Rogue testified that he could not directly link D.L.A. to any item found in the vehicle or to the robberies of Castillo and Melrose. Finally, D.L.A. argued that the court should grant his directed verdict because the evidence was circumstantial, not direct.

The trial court denied the directed verdict. The trial court found that D.L.A. had engaged in delinquent conduct. The court made the following special findings: "That [D.L.A.] need[s] a highly structured environment with a level of supervision and control that cannot be met by resources available in the community." The trial

court rendered a disposition of commitment to the Texas Juvenile Justice Department.

D.L.A. appealed.

**Analysis**

In his sole issue, D.L.A. argues that the trial court abused its discretion by denying his motion for directed verdict. He maintains that the trial court improperly admitted several of the State's exhibits, in particular photographs depicting a yellow sweatshirt allegedly worn by D.L.A. on August 15, 2022, in an attempt to prove that D.L.A. committed the robberies against Castillo and Melrose. He argues that the exhibits did not identify him or link him to the robberies of Castillo and Melrose.

**I. We review legal sufficiency issues in juvenile cases using the same standard applicable to criminal cases.**

"The Legislature enacted the Juvenile Justice Code as a separate system for the prosecution, adjudication, sentencing, and detention of juvenile offenders to protect the public and provide for the wholesome moral, mental, and physical development of delinquent children." *In re Hall*, 286 S.W.3d 925, 927 (Tex. 2009); *see* TEX. FAM. CODE § 51.01. "The Code covers the proceedings in all cases involving a child's delinquent conduct." *Hall*, 286 S.W.3d at 927; *see* TEX. FAM. CODE § 51.04(a). Juvenile courts generally have exclusive original jurisdiction over proceedings involving delinquent conduct by a person who was a child at the

7

time that he engaged in the conduct. *Hall*, 286 S.W.3d at 927. Generally, the Juvenile Justice Code defines a "child" as a person who is ten years of age or older and under seventeen.[2] TEX. FAM. CODE § 51.02(2). As relevant to this case, delinquent conduct is defined as "conduct, other than a traffic offense, that violates a penal law of this state or of the United States punishable by imprisonment or by confinement in jail." *Id.* § 51.03(a)(1).

Although juvenile cases are classified as civil proceedings, they are "quasi-criminal" in nature. *In re M.A.F.*, 966 S.W.2d 448, 450 (Tex. 1998); *see In re L.D.C.*, 400 S.W.3d 572, 574 (Tex. 2013). Civil and criminal rules apply at different stages of the same proceeding. *In re I.F.M.*, 525 S.W.3d 884, 886 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also* TEX. FAM. CODE § 51.17. For example, procedure in a juvenile delinquency proceeding is set forth by the Texas Family Code. In a juvenile proceeding, the trial court first conducts an adjudication hearing for a factfinder to determine whether the juvenile engaged in delinquent conduct. TEX. FAM. CODE § 54.03. If the factfinder determines that the juvenile engaged in delinquent conduct, then the trial court conducts a disposition hearing. *Id.* § 54.03(h). "Disposition is akin to sentencing and is used to honor the non-criminal character of the [juvenile] proceedings." *In re B.D.S.D.*, 289 S.W.3d 889,

---

[2]    D.L.A. was sixteen years old at the time of the offenses alleged in the petitions.

8

893 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (internal quotations omitted).

On the other hand, the burden of proof in a juvenile-adjudication proceeding is beyond a reasonable doubt, not a preponderance of the evidence. *Moon v. State*, 451 S.W.3d 28, 45 (Tex. Crim. App. 2014). "Although juvenile [adjudication] proceedings are civil matters, the standard applicable in criminal matters [i.e., proof beyond a reasonable doubt] is used to assess the sufficiency of the evidence underlying a finding the juvenile engaged in delinquent conduct." *In re R.R.*, 373 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *see also* TEX. FAM. CODE § 54.03(f) ("The child shall be presumed to be innocent of the charges against the child and no finding that a child has engaged in delinquent conduct or conduct indicating a need for supervision may be returned unless the state has proved such beyond a reasonable doubt.").

Accordingly, we review the sufficiency of the evidence to support a finding that a juvenile engaged in delinquent conduct using the standard applicable to criminal cases. *R.R.*, 373 S.W.3d at 734. In criminal cases, a challenge to the denial of a motion for directed verdict is treated as a challenge to the legal sufficiency of the evidence and is reviewed under the same standard. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Wharton v. State*, 711 S.W.3d 92, 101

(Tex. App.—Houston [1st Dist.] 2024, pet. ref'd), cert. denied, No. 25-5977, 2025 WL 3507076 (U.S. Dec. 8, 2025).[3]

Every criminal conviction must be supported by legally sufficient evidence as to each element of the offense that the State is required to prove beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 859–60 (Tex. Crim. App. 2011). To determine whether this standard has been met, we review all the evidence in the light most favorable to the verdict and decide whether a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899–902 (Tex. Crim. App. 2010). Our standard of review applies to cases involving both direct and circumstantial evidence. *R.R.*, 373 S.W.3d at 735.

---

[3] In his brief, D.L.A. states that "the directed verdict ruling against him lacks legal sufficiency in the context of an elevated abuse of discretion review." In an appeal from a disposition order under Family Code section 54.04, we first review any challenged findings for sufficient evidence and then review the disposition decision for an abuse of discretion. *In re J.H.*, 698 S.W.3d 101, 106 (Tex. App.—Houston [14th Dist.] 2024, no pet.). "This standard is faithful to the requirement that juvenile courts make certain statutory findings while also acknowledging the juvenile courts' broad discretion in assessing an appropriate disposition." *Id.*; *see also In re J.P.*, 136 S.W.3d 629, 630–31 (Tex. 2004) (discussing the requirement of statutory findings); *In re K.H.*, 682 S.W.3d 567, 575 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) ("A juvenile court has broad discretion to determine a suitable disposition for a juvenile who has been adjudicated as having engaged in delinquent behavior."). In this case, D.L.A. has challenged only the sufficiency of the evidence to support the trial court's adjudication, not the disposition to the Texas Juvenile Justice Department. Therefore, we apply a sufficiency of the evidence standard of review to determine the sole issue raised in this appeal, not an abuse of discretion standard.

The factfinder is the sole judge of "the facts proved, and of the weight to be given to the testimony." *See Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). Thus, an appellate court does not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the factfinder. *See Adames*, 353 S.W.3d at 860; *Wiley v. State*, 388 S.W.3d 807, 813 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). We presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

## II. Legally sufficient evidence supports the trial court's denial of the motion for directed verdict.

D.L.A.'s defensive theory at trial and on appeal is that he was not the person who robbed Castillo and Melrose. He argues that the trial court improperly admitted evidence of extraneous offenses that deprived him of a fair trial and caused the court to erroneously deny his motion for directed verdict. In the trial court, D.L.A.'s motion for directed verdict was based on (1) inconsistencies in Castillo's and Melrose's testimony and (2) the allegedly erroneous admission of evidence. D.L.A. specifically argued in the trial court about the admission of Exhibit 17 (a photograph of the rear, exterior of the Nissan Rogue), Exhibit 19 (a photograph showing a black backpack with yellow hoodie on top of it on the front passenger seat), Exhibit 20 (a close up photograph of the black backpack and yellow hoodie on the front passenger seat), and Exhibit 21 (a photograph of the

11

black backpack on a white background), Exhibit 22 (a photograph of the black backpack, partially opened, showing blue gloves inside), Exhibit 23 (a photograph of the black backpack and its contents, including the black pellet gun, on a white background), and 24 (there is no exhibit 24).

## A. The Testimony

The trial court, as factfinder, was the sole judge of the credibility of the witnesses and the weight to give their testimony. *See Bartlett*, 270 S.W.3d at 150. In fulfilling that role, the court was entitled to resolve any inconsistencies in the testimony and to find credible both Castillo's and Melrose's in court identifications of D.L.A. *See Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020) ("The fact-finder is responsible for judging the credibility of witnesses and may find credible all, some, or none of the testimony that the witnesses give."). The testimony of a single eyewitness can be sufficient to support a felony conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Floyd v. State*, No. 02-22-00082-CR, 2023 WL 2033831, at *3 (Tex. App.—Fort Worth Feb. 16, 2023) (mem. op., not designated for publication), *aff'd*, 714 S.W.3d 9 (Tex. Crim. App. 2024). And a victim's in-court identification of a defendant can be sufficient to support a robbery conviction, even when there were inconsistencies between the victim's prior and in-court descriptions of the defendant and his accomplice. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982).

Castillo testified that the person who pointed the gun at her wore a red hoodie, however, at trial she said she remembered his face, and then she identified D.L.A. as the person who pointed the gun at her and tried to get into her car. Likewise, Melrose identified D.L.A. as the person who assaulted him after trying to gain entry to Castillo's car. Because our standard of review requires us to defer to the factfinder's determinations, we conclude that a rational factfinder could have found beyond a reasonable doubt that D.L.A. is the person who robbed Castillo and Melrose based on their in court identification of him. *See Jackson*, 443 U.S. at 318–19; *Brooks*, 323 S.W.3d at 901–02. Therefore, the evidence was legally sufficient.

## B.     The Exhibits

In arguing his oral motion for directed verdict in the trial court, D.L.A. relied on two grounds to support his contention that the State failed to prove beyond a reasonable doubt that D.L.A. "was the perpetrator in these two cases." First, D.L.A.'s counsel argued about Castillo's and Melrose's testimony, which we addressed in section II.A. above. Second, he argued about some exhibits, saying:

> Finally, we have the evidence from today from the primary investigator and the secondary investigator who had the evidence especially in Exhibits 20—17, 19, 20, 21, 22, 23, and 24. Mr. Matos [the crime scene investigator for the Houston Forensic Science Center who photographed the Nissan Rogue and its contents] was unable to link my client to any of those items of clothing or the gun or anything else to the actual crimes that my client is accused of, Judge.

13

And for that reason, it has cast doubt on the whole proceeding . . . .

On appeal, D.L.A. raised only a single issue: that the trial court erred by denying his motion for directed verdict. D.L.A. did not raise an issue challenging the trial court's admission of evidence, arguing that he was harmed by the admission of evidence, and seeking a new trial based on the allegedly erroneous admission of evidence. *See, e.g.*, *Jackson v. State*, 314 S.W.3d 118, 135 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (remanding for new trial after concluding that erroneous admission of evidence was harmful under Texas Rule of Appellate Procedure 44.2(b)). Instead, D.L.A. argued that the trial court should have granted his motion for a directed verdict because it improperly admitted 18 exhibits over his objection. These 18 exhibits included the five exhibits (photographs of the Nissan Rogue, inside and outside, and its contents) that he mentioned in his oral motion for directed verdict in the trial court. "[A] challenge to the denial of a motion for a directed verdict is not the appropriate vehicle for challenging the admissibility of evidence." *Carroll v. State*, No. 14-14-00178-CR, 2015 WL 4984961, at *4 (Tex. App.—Houston [14th Dist.] Aug. 20, 2015, no pet.) (mem. op.; not designated for publication).

Moreover, when examining the sufficiency of the evidence, an appellate court considers "all of the evidence admitted at trial, including pieces of evidence that may have been improperly admitted." *Parker v. State*, 727 S.W.3d 38, 51

14

(Tex. Crim. App. 2025); *Ragsdale v. State*, 713 S.W.3d 435, 454 (Tex. App.— Houston [1st Dist.] 2025, no pet.) (rejecting argument that evidence would be legally insufficient if allegedly improperly admitted evidence was ignored because court of appeals considers all evidence when conducting legal sufficiency review). This is so because "[o]ur duty as a reviewing court is merely to ensure the evidence presented actually supports a conclusion that the defendant committed the crime." *Carroll*, 2015 WL 4984961, at *2; *see Ragsdale*, 713 S.W.3d at 453 ("Our role is that of a due process safeguard, and we consider only whether the factfinder reached a rational decision.").

We have already concluded that the court reached a rational decision based on the testimony of Castillo and Melrose, which we found to be legally sufficient in section II.A., above. We hold therefore that the trial court did not err by denying the motion for directed verdict. We overrule D.L.A.'s sole issue.

## Conclusion

We affirm the judgment of the trial court.

Susanna Dokupil
Justice

Panel consists of Justices Guerra, Caughey and Dokupil.

15